225 S.W.2d 728 (1950)
ROBERTS
v.
CLEVENGER.
No. 41231.
Supreme Court of Missouri, Division No. 1.
January 9, 1950.
*729 Walter A. Raymond, Kansas City, attorney for appellant.
Frank J. O'Leary, Kansas City, attorney for respondent.
VAN OSDOL, Commissioner.
Action for specific performance of an alleged oral contract to sell and convey real estate, a described lot and house thereon situate at 5438 East Twenty-seventh Street Terrace in Kansas City. The trial chancellor found plaintiff entitled to a decree of specific performance and entered a decree divesting defendant of title to the described lot and vesting title in plaintiff. Defendant has appealed.
Defendant-appellant contends plaintiff failed in proving the elements of her case by proof of the quality and quantity essential to authorize the relief of specific performance of an oral contract to sell and convey real property. Defendant-appellant urges the decree in plaintiff's favor should be reversed and a decree entered for defendant.
Plaintiff had alleged that, on or about July 1, 1939, defendant, Lola M. Clevenger (then Lola M. Cashner), was the owner of the described lot and residence thereon in Kansas City; that plaintiff, Hattie Roberts, was the owner of a described lot, a half acre, in Jackson County; and that on or about July 1, 1939, defendant orally agreed to sell and plaintiff agreed to buy the Kansas City property for $1200, payable by a credit of $300 for plaintiff's Jackson County lot, and the balance of the purchase price, $900, to be paid at the rate of $15 per month for ten months of the year, without interest, until the purchase price was paid, at which time the parties were to exchange conveyances of the respective properties pursuant to the alleged agreement. It was further alleged that, until the purchase price was fully paid, the plaintiff should pay the taxes on the Kansas City property and defendant on the lot in Jackson County. Plaintiff further alleged her entry into possession of the Kansas City property; her payment of taxes thereon; the making of substantial and permanent improvements; the (over) payment of the purchase price allegedly agreed upon; her compliance in all respects with the terms and provisions of the stated agreement; her demand (and refusal by defendant) for a deed conveying the Kansas City property to plaintiff; her offer and renewed offer to convey the Jackson County lot to defendant; and the inadequacy of any legal remedy.
Defendant by answer raised the general issue, and set forth affirmatively the Statute of Frauds, Section 3354, R.S.1939, Mo. R.S.A. § 3354.
The nature of the case requires our careful review of the whole of the evidence introduced.
In actions of an equitable nature we review the whole record, determine the weight and value of the evidence and reach our own conclusions as to the facts, giving due deference to the findings of the chancellor, who personally saw the witnesses and heard them testify.
The Statute of Frauds is an insuperable barrier to enforcement of specific performance of an oral contract to sell and convey land, unless the proof of such contract is so clear, cogent and convincing as to leave no reasonable doubt in the mind of the chancellor as to its terms and conditions; and where part performance is relied on to take the case out of the operation of the Statute there must be like proof that the acts refer to that contract and would not have been done unless on account of and pursuant to that very agreement and with a direct view of its performance. The taking of and continuance in possession by a vendee under a parol contract made by a vendor, with his consent, the payment of a substantial part or all of the purchase price, and the making of valuable improvements are acts of part performance, when referable solely and unequivocally to the parol contract. Scheerer *730 v. Scheerer, 287 Mo. 92, 229 S.W. 192; 101 A.L.R. 997-1001 and 1056-1059. But the requirement of referability of the acts to the alleged contract is not so onerous on a plaintiff as to defeat his action merely because there is a conflict of evidence regarding that to which his acts referred. Sportsman v. Halstead, 347 Mo. 286, 147 S.W.2d 447; 49 Am.Jur., Statute of Frauds, § 428, p. 734, at page 736.
Defendant Lola M. Clevenger and plaintiff Hattie Roberts are aunt and niece. In 1921 plaintiff, an orphan seventeen years old, came to defendant's home in Kansas City and lived in the aunt's home until 1933. They lived in the property herein involved. Plaintiff worked and "paid my room rent."
In 1933 defendant and her husband (Cashner, now deceased) moved to a farm near Green Ridge. A few weeks later plaintiff went out to the farm and made her home with defendant and defendant's husband. Meanwhile the Kansas City property was rented by defendant to the Cayou family.
Plaintiff worked on the farm, and used some of her own money (about $1000) in buying livestock for the farm. She was to share the net of the farm production with the Cashners "50-50." But times were hard and "there was a drought on" and plaintiff received no moneyonly a livingshe never got back any of the money she had invested in livestock; so in 1937 she went back to Kansas City and became a telephone operator at the Muehlebach Hotel and, in 1939, was receiving $60 per month of which she paid $5 per week rent for a kitchenette.
In June 1939 defendant wrote one or more letters to plaintiff. Thereafter, in early July of that year, plaintiff moved into the Kansas City property and paid $15 per month (ten months of each year) until March 1947, the total amount of these payments being $1170. Although plaintiff had not, before 1939, paid taxes or insured the Kansas City property, she thereafter paid taxes and insured the Kansas City property (in her own name), and she no longer paid taxes on the Jackson County lot. Plaintiff further expended amounts from time to time aggregating about $190 in decorating and in making minor repairs on the Kansas City property; and additionally in the summer of 1946 had a new roof put on the house, expending $200.
(After the death of defendant's second husband, Clevenger, in April 1946, plaintiff invited defendant to live with plaintiff in the Kansas City property. Defendant accepted the invitation.)
As we have seen supra, plaintiff overpaid defendant $270 in cash (assuming the relation between them was that of vendor and purchaser, as alleged by plaintiff). Plaintiff, in explaining the overpayment, testified that she was all the while relying upon defendant's promise and urging defendant to make a statement of the balance due.
Plaintiff further testified that in 1946 she had asked defendant "how much balance I owed her; she thought a bit and she said `$175.00' * * *. Continued on up to February (1947), and I offered her a payment, and I said `Auntie, here is your payment.' * * * She says `Hattie, I think you got me paid up.' She said `I will get the book up, figure it up some of these days.' I said `I wish you would, so we can get it straightened up.' * * * In March, 1947, I offered my payment. She said, `You keep that, Hattie. You have got me paid up.' She said `I will not accept it, unless you want to pay your rent.' I said `Rent?' She said `Yes, I just as well tell you now that you have been paying rent all the time.' I said `I am not going to take it that way.'" A question was asked defendant in a deposition three weeks before trial (June 29, 1948), "Didn't you tell her that you thought she was paid up?" Defendant answered, "In February (1947) she offered me the money and I told her it was time she understood things right." Thus the positions of the parties may be observed. The plaintiff claims she had contracted to buy the Kansas City property, but defendant takes the position the relation was that of landlord and tenant.
We have seen there was a change in the occupancy of the Kansas City property in *731 early July, 1939. The tenants had been notified to move and plaintiff, on or about July 1st, admittedly with defendant's consent, entered into possession and lived in the property. Plaintiff paid taxes, contracted insurance and made repairsone item, rebuilding the roof, was of substantial character. Defendant had not theretofore insured the property. Plaintiff paid defendant sums of money in total amount $1170. And we have noticed plaintiff, thereafter, has not and defendant has paid the taxes on the Jackson County property. These circumstances must have been the result of some contractual relation between the parties, plaintiff and defendant. If the entry into possession, payment of the monies (as purchase money) and the making of substantial and valuable improvements or repairs were with the knowledge and consent of defendant and were in reliance upon and in direct compliance with and referable to a definite verbal contract of sale, it would be inequitable to plaintiff should the relief of specific performance be refused because of the Statute of Frauds (unless the evidence discloses some other and unconscionable or inequitable circumstance prompting the withholding of equitable relief). To refuse the relief would make the Statute a means of practicing a fraud upon plaintiff.
Bearing upon the question of whether the stated acts of plaintiff were referable to a verbal contract of sale or rental, we have noted two exhibits, receiptsone (Plaintiff's Exhibit One), dated July 1, 1939, "Received of Hattie $15 for payment on house at 5438 E. 27th St. Terr. Kans City Mo. by Mrs. Lola Cashner"; the other (Plaintiff's Exhibit Two), "July 3d Hattie paid 11th payment on house $15, by L. M C." The $15 paid on that date, July 3, 1940, was, as in the receipt stated, the eleventh payment of $15. Defendant equivocated but finally admitted these two receipts were written and signed or initialed by her, but she explained the uses of the word "payment" in the two receipts were mistakes and that "rent" was intended. (We have seen on the face of the receipt dated July 3d, the figures of a computation by defendant, 15 multiplied by 11 equals $165.)
In 1946 one Al Watkins, agent of a roofing company, builder of the new roof on the Kansas City property, was interviewing plaintiff in defendant's presence (he said) concerning the roofing improvement and the ownership of the property. According to the testimony of Watkins and plaintiff, plaintiff told Watkins she "was buying the place * * * said she was buying it from her aunt. * * * She said she was paying for it by the month." Watkins stated "her aunt didn't object to it, so it was all right with me." The agent, who wrote the insurance on the Kansas City property, testified that, in the presence of her aunt, plaintiff told him she had "bought the house from her auntie." Defendant told him that "she owned it one time and sold it to Hattie * * * the aunt said it was going to be a nice home for Hattie." Defendant denied the conversations occurred in her presence.
It was admitted by defendant she, at no time, registered the property "with the O. P. A. as rental property."
We feel justified in tentatively assuming the various acts of plaintiff stated supra were referable to a contract to sell and convey. Further evidence should be reviewed in order to ascertain if the contract in terms and conditions as alleged is sustained by clear, cogent and convincing proof.
Plaintiff had not retained the defendant's letter or letters received by plaintiff in June 1939. Plaintiff undertook to testify of the contents of the letters. In the first letter (received about the first of June, 1939), according to plaintiff's testimony, defendant asked plaintiff how she "was getting along,how I was, and how much rent I was paying for the kitchenette; and I answered her letter. * * * Then, about a week later she (defendant) answered back. She told me this property was going to be vacant. * * * She asked me if I would like to buy it; she said if I would buy it she would sell it to me for $1200 with no interest for 10 *732 months, and 2 months out of the year to pay my taxes,because I was only making $60 a month. * * * She also asked me if I cared to go over and look at the house * * * . I did * * * and I called her by phone and I told her the condition of the house; and she told me that if I would come down she would give me * * * furniture to start housekeeping on."
Plaintiff rented a trailer (to transport the furniture), and asked a friend, one Roy Bram, to use his automobile to drive her down because she had no car. Having arrived at defendant's home, "We had dinner, and after dinner Auntie and I (no one but she and I) went to talking about the house, and she still said she would sell me the house for $1200, with no interest for 10 months, and would allow me 2 months out of the year to pay my taxes and keep up the repairs. She sold me that property at that price, to make it easier for me, because I was only making $60 a month. She asked me what I had for a down payment, and I told her all I had was the half acre in Munsell Addition (Jackson County lot); and she said `What did you pay for it.' I said `Auntie, I paid $300 for it,' and she said `I will accept it,' * * * I moved in the house July 1st, 1939. I also made my first payment." (Plaintiff's Exhibit One, supra.) She testified she thereafter made payments by express and postal money orders, and by cash. (Defendant does not contend plaintiff has not paid defendant sums totaling $1170.) Plaintiff further testified, "She (defendant) said at the 11th payment, of $15, I had paid in within a year's time $165." Defendant figured "that on this receipt." (Plaintiff's Exhibit Two, supra.)
Plaintiff stated she showed the two letters to her friend, Roy Bram, whose testimony corroborates plaintiff relating to the contents of the letters, and who further testified he heard defendant tell plaintiff "she (defendant) would have to ask for a down payment, and Hattie said `I haven't anything only a half acre (Jackson County lot).'"
Defendant categorically denied she had at any time agreed to sell her property on any terms to plaintiff. Defendant testified plaintiff said she "would like to buy it; I told her she was not able to buy it. I said `You want to buy it what with, on $60 a month.' * * * I told her I would like to have her rent it, and save the same as $60 a year, when she was paying $20 a month. * * * She was to do her own papering and cleaning. I said nothing about putting the roof on, that was my job. Or about those other things I didn't ask her to do."
Mrs. Emma Cayou, who had rented the Kansas City property in 1933 and vacated in 1939, testified plaintiff told her in June 1939 that plaintiff "was going to rent it herself, take it over like we did; * * * she could have bought it any time after we left there." Mrs. Cayou paid $15 per month, any "fixing we wanted done on the place we were to do ourselves." The Cayous were paying no taxes and no insurance; and made no permanent improvements.
We infer the property was worth $1500 to $1700 in 1939. We infer it is now (at the time of trial) worth $4500 to $5000.
Defendant-appellant, citing Herman v. Madden, 349 Mo. 447, 162 S.W.2d 268, urges the testimony supporting the alleged contract is of ancient conversations, loose and causal and of little weight. It is further urged the testimony of Roy Bram (and by inference the testimony of plaintiff) is unworthy of belief. We are tacitly invited to infer the relation of Bram and plaintiff was improper and from that we are asked to hold their testimony does not merit credence. This is founded on the evidence Bram is a married man; all was not well between Bram and wife; and the evidence tends to show that Bram was plaintiff's friendly acquaintance and, according to defendant, on occasions displayed affection for plaintiff (and he sometimes displayed affection for defendant).
The admonition that conversations relied on as proof of an (oral) contract should not be "too ancient, loose, or casual" is recognized and is abstractly applicable to the instant action. However, the requirement is one of the phases of the rule especially applicable to the class of actions *733 against a decedent's personal representatives or heirs to enforce on oral contract to convey, to devise or to leave property to another, and so divert the usual statutory devolution of estates of decedents. See Russell v. Sharp, 192 Mo. 270, 91 S.W. 134, 111 Am.St.Rep. 496; Forrister v. Sullivan, 231 Mo. 345, 132 S.W. 722; Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024; and Herman v. Madden, supra, and other cases therein cited. In such class of actions plaintiffs often urge acceptance of testimony of witnesses relating to the declarations of decedents after many years have intervened, and which witnesses had, at the time of the asserted declarations, no reason to remember the very words uttered by the declarants. Such testimony is a low grade of evidence. It is not improper in such cases for the court to receive with "a great deal of caution" the testimony of a witness who so undertakes "to say what men who are now dead said". Russell v. Sharp, supra, 192 Mo. at page 290, 91 S.W. at page 139; 69 A.L.R. 16. And it must be conceded that in any case, in order to put an oral contract to transfer an interest in land by conveyance or devise without the operation of the Statute of Frauds (or Wills), the proof of the contract must be such as to leave no reasonable doubt as to the contract relied on and its conditions and terms.
In the instant case plaintiff's testimony was of her own conversations with defendant and of the contents of letters received from defendant. The conversations and letters, according to plaintiff's testimony, pertained to the purchase of the involved real property. If her testimony is to be believed, she was buying a home. She was personally and directly interested and had good reason for remembering the written and oral language of the letters and conversations. Her testimony throughout was direct and unequivocal in tending to show the agreement as alleged, and, so far as the record discloses, her testimony was worthy of belief. Her testimony was substantiated by the self-disserving statements, written and oral, of defendant. Plaintiff's testimony as to the contents of the letters was corroborated by Bram, who, it is true, was not so directly interested. But this court has said the testimony of even one witness may be sufficient to establish an oral contract for the conveyance of land if his story is clear and convincing. O'Day v. Van Leeuwen, 354 Mo. 604, 190 S.W.2d 263; Smith v. Lore, 325 Mo. 282, 29 S.W.2d 91; Merrill v. Thompson, 252 Mo. 714, 161 S.W. 674.
If the plaintiff's testimony be given the decisive weight and value (as was her testimony given by the trial chancellor) and consequently it is found the contract was thus proved as alleged and the relation of landlord and tenant disproved, then the plaintiff's acts in entering into possession, in the payment of monies (purchase price), and in the making of valuable and permanent improvements or repairs were referable to the contract alleged and proved, and to none other. Compare Sportsman v. Halstead, supra.
We defer to the trial chancellor's findings.
While the defendant-appellant in her brief refers to herself as an aged person there is no evidence of her age in the record. We infer her age is more advanced than that of her niece who, it seems, is about 44 years of age (at the time of trial). There is no evidence tending to show plaintiff overreached defendant in the transaction. There was no showing of improvidence, or oppression. It is inferred defendant has other property, as she had in 1939. The contract was a natural one when the evidence of the parties' relationship and association is considered, especially their joint experience in the years of drought when plaintiff invested her own money in livestock on defendant's farm. The contract to sell and convey for the agreed consideration of $1200 for a property at the time worth $1500 to $1700 is not so unconscionably inadequate or disproportionate in price as to alone effect the denial of equitable relief. Compare Evans v. Evans, 196 Mo. 1, 93 S.W. 969. Generally the questions of the fairness of a contract or adequacy of price are to be considered as of the time the contract was entered into. 49 Am.Jur., Specific Performance, §
*734 63, p. 77; 58 C.J. Specific Performance, § 124, p. 950; and again examine Evans v. Evans, supra.
The judgment and decree should be affirmed.
It is so ordered.
BRADLEY, C., concurs.
ASCHEMEYER, C., not serving when the cause was argued and submitted.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.