Russell GILLESPIE and Vonda Gillespie, Appellants,

v.

Louise PULSIFER, a/k/a Louise L. Pulsifer, a/k/a Mrs. James Wiley Pulsifer, Respondent.

No. WD 34043.

Missouri Court of Appeals, Western District.

July 26, 1983.

R.M. Gifford, Green City, for appellants.

Harold L. Miller and Day Miller, Maysville, for respondent.

Before TURNAGE, P.J., SOMERVILLE, C.J., and KENNEDY, J.

KENNEDY, Judge.

The main question in the appeal before us is the sufficiency of certain signed writings to satisfy the statute of frauds requirement that a contract for the sale of real estate shall be "in writing and signed by the party to be charged therewith." § 432.010, RSMo 1978.

Upon evidence which we shall hereafter describe, the trial court granted a summary judgment in the defendant seller's favor upon the petition of the buyer for specific performance of the alleged contract.

We hold that the court ruled correctly and that as a matter of law the contract was unenforceable because not in writing as required by the statute of frauds.

The facts are as follows:

Defendant Louise Pulsifer and her husband owned a 196.5-acre farm in Gentry County, Missouri, as tenants by the entirety. Mr. Pulsifer died and Mrs. Pulsifer determined to sell the property. She advertised it in a local newspaper. The advertisement read as follows:

### FARM FOR SALE

196½ A located 5 mi. west of Albany or east from Carmack Junction on the south side of Highway 136. A good tile well and stocked pond, rest in cultivation. Sealed bids will be accepted at The First State Bank of New Hampton until 2:00 p.m. on Monday, December 8. 20% down and balance due at delivery of deed and abstract. I reserve the right to reject any or all bids.

MRS. JAMES WILEY PULSIFER
816–726–5205 or 816–439–2125

Plaintiffs Russell Gillespie and Vonda Gillespie submitted a bid of $1,000 per acre, totaling $196,500. There is nothing in the evidence about the form of this bid. According to Mr. Gillespie's oral testimony, their bid was accepted and they paid a 20% down payment by check for $39,300. The check was payable to defendant Mrs. Pulsifer, and in the lower left-hand corner of the check was the notation "20% Down." The check was endorsed by Mrs. Pulsifer and collected by her.

The abstract of title, certified to December 8, 1980, was delivered to an attorney for the Gillespies for examination, who rendered an opinion upon the abstract examination. The opinion was dated December 30.

A controversy arose between the Gillespies and Mrs. Pulsifer. First, Mr. Gillespie learned there was only 183.7 acres in the farm instead of 196.5 acres. He approached Mrs. Pulsifer about the acreage shortage, presumably with the aim of reducing the purchase price to $183,700. He said, in testimony given upon the hearing upon the defendant seller's motion for summary judgment, that he did not ever say to her that he would not pay the full $196,500.

Second, the attorney who examined the abstract of title for plaintiffs Gillespie made a requirement that some assurances be given to the buyer about the possible lien of federal and Missouri state taxes which might be owing upon Mr. Pulsifer's death.

Because of our conclusion that the statute of frauds makes the contract between the parties, if any, unenforceable, it is not necessary for us to deal with the legal effect of either of the two matters about which the parties disagreed, namely, the acreage shortage and the death taxes.

Mrs. Pulsifer wrote to the Gillespies the following letter. It was dated January 10, 1981:

Dear Mr. and Mrs. Gillespie:

This letter is in regard to your bid to purchase my farm described as follows:

North 35 acres of the West Half (W½) of the Northeast Quarter (NE¼) and the EAST HALF (E½) of the Northwest Quarter (NW¼) and the West Half (W½) of the Northwest Quarter (NW¼), Section Twenty-nine (29), Township Sixty-three (63), Range Thirty-one (31), Gentry County, Missouri.

I am returning herewith the down payment of $39,300.00 which you previously made. I do not wish to sell the farm to you and I do not believe I am under any legal obligation to do so. The reasons why I am not under any legal obligation to do so are as follows:

1. There is no written contract, and a written contract is required by the Statute of Frauds.

2. There was never any agreement between us, written or otherwise, because I advertised the land as 196.5 acres, more or less, and you bid on it based upon that acreage, yet now you are claiming there are only 183.7 acres and that the purchase price should be reduced accordingly. I offered to sell only on the basis of 196.5 acres, more or less, and not on the basis of any lesser acreage.

3. You have refused to accept title until a discharge is obtained of the alleged Federal Estate Tax lien for payment of any such tax due by reason of the death of my husband, James Wiley Pulsifer.

Sincerely yours,

[Signed] Louise L. Pulsifer

The letter was accompanied by a check signed by Mrs. Pulsifer, payable to Russell Gillespie, in the amount of $39,300. In the lower left-hand corner was the notation: "For refund of deposit on my 196.5A farm bid rejected." The check was not negotiated by the Gillespies.

I(A)

It will be noticed that there are three documents to which Mrs. Pulsifer's name is signed—the down payment check given her by the plaintiffs Gillespie; the letter advising the Gillespies of her intention not to sell the farm to them; and the check refunding the down payment. Do these three documents taken together satisfy the statute of frauds? We hold they do not.

█ In order to satisfy the statute of frauds, the writing signed by the party to be charged therewith, must be complete in itself, leaving no essential part to be proved by parol. *Jungkuntz v. Carter,* 254 S.W. 359, 360 (Mo. banc 1923); *Ringer v. Holtzclaw,* 112 Mo. 519, 20 S.W. 800, 801 (1892); 72 Am.Jur.2d *Statute of Frauds,* § 296 (1974).

"The essential terms of a contract of the character sought to be enforced in this action are: (1) the parties; (2) the subject matter; (3) the promises upon both sides; (4) the price; and (5) the consideration. Pomeroy's Specific Performance of Contracts, (3rd Ed.) sec. 87, page 211; *Ogooshevitz v. Arnold,* 197 Mich. 203, 163 N.W. 946, 165 N.W. 633." [1] *Ray v. Wooster,* 270 S.W.2d 743, 752 (Mo.1954).

█ The foregoing documents signed by Mrs. Pulsifer would no doubt be sufficient to identify the subject matter and the parties and to state the price or consideration—but it fails to state the fourth essential, namely, the undertaking or the promise on the part of Mrs. Pulsifer to sell the farm. It is clear that Mrs. Pulsifer received 20% as a "deposit," to use the word on her refund check, or as a "down" payment, to use the word on the Gillespie's check to her. It may be inferred that the total sale price was five times the amount of the $39,300 down payment, or $196,500. Yet nowhere

1. "There is a diversity of opinion in the various jurisdictions as to what constitute 'essential terms,' Williston on Contracts, supra, pp. 76, 77, and ... it seems to us that 'essential terms' in an agreement to enter into a lease must of practical necessity be determined upon a consideration of all the facts and circumstances of each case, *American Mining Co. v. Himrod-Kimball Mines Co.,* 124 Colo. 186, 235 P.2d 804, 807[3] ...." *Frostwood Drugs, Inc. v. Fischer & Frichtel Construction Co.,* 352 S.W.2d 694, 700 (Mo.1961).

can one find that Mrs. Pulsifer agreed to sell for that figure, or for any figure. In fact in her refund check the payment is referred to as a "bid," and the same term is used in her letter accompanying the check, in which she terminated whatever relationship existed between her and the Gillespies as to the sale of the farm.

To find an agreement on Mrs. Pulsifer's part to sell the farm to the Gillespies for the stated price, one must resort to parol evidence. Let us say, without so holding, that the addition of the newspaper advertisement to the signed writings would make out a written contract between these parties. However, the advertisement may not be considered because it is not expressly referred to in any of the signed writings. When a series of writings is depended upon to make up the contract sought to be enforced, there must be an explicit internal link amongst the papers. *Arnold v. Broadmoor Development Co.,* 585 S.W.2d 564, 566 (Mo.App.1979).

The oral testimony of Mr. Gillespie would support the conclusion that there was indeed an agreement by Mrs. Pulsifer to sell the farm to the Gillespies for the $196,500, but that does not satisfy the statute of frauds. To repeat the rule earlier stated in this opinion, the signed writing must be complete in itself, and its terms may not be eked out or pieced out by parol evidence. *Ringer v. Holtzclaw,* supra; *Jungkuntz v. Carter,* supra.

### I(B)

As a second line of defense against summary judgment, appellants claim that their initial payment of the $39,300 on the purchase price constituted partial performance which would remove the case from the statute of frauds. Part payment of purchase price of real estate, however, by itself, does not constitute such part performance. *Alonzo v. Laubert,* 418 S.W.2d 94, 97 (Mo.1967); 37 C.J.S. Statute of Frauds, § 252(2) (1943).

### II

Calling our attention to Supreme Court Rule 74.04, appellant says:

> Summary judgment was improper because Respondent has not shown by unassailable proof that the statute of frauds would bar Appellants' recovery under any *discernible circumstances,* and that there is no theory within the scope of the pleadings or within the *broad scope of probable evidence* which if believed by the trier of facts would authorize recovery by Appellants. (Emphasis added.)

Appellants, however, may not upon motion for summary judgment depend upon "discernible circumstances" or upon "probable evidence" but must "by affidavits or as otherwise provided in this Rule, ... set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). If plaintiffs had evidence contradicting the allegations of defendant Pulsifer's affidavit supporting her motion for a summary judgment, or had additional evidence bearing upon the statute of frauds question, by way of avoidance, they were obliged to present it to the court in response to the motion for summary judgment. They could not rest upon evidence which might be imagined. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 28 (Mo.App.1978).

Judgment affirmed.

All concur.