John J. PIAZZA, Jr., Respondent,

v.

Ralph Patton COMBS, et al.; Rob P. Call, Limited Conservator of the Estate of Ralph Patton Combs, Appellants.

No. WD 67116.

Missouri Court of Appeals, Western District.

June 12, 2007.

---

**2.** Patrolman Little was not deposed by either party.

Daniel R. Dunham, Columbia, MO, for Appellant, Combs.

George S. Smith, Columbia, MO, for Appellant, Call.

Sherry A. Mariea, Jonathan C. Browning, Co–Counsel, Jefferson City, MO, Stewart M. Stein, Co–Counsel, Cheryl A. Bloethe Linder, Co–Counsel, Kansas City, MO, for Respondent.

Before VICTOR C. HOWARD, C.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

ROBERT G. ULRICH, Judge.

Ralph Patton Combs and Rob P. Call appeal the judgment of the Howard County Circuit Court ordering specific performance of a contract to sell certain real property to John Piazza. They present three points on appeal. First, they claim the trial court's judgment exceeded its jurisdiction as it went beyond the scope of Mr. Piazza's petition. Second, they assert the trial court erred in not entering judgment consistent with Mr. Combs's testimony. Third, they contend specific performance is barred by the statute of frauds. All three points are denied, and the judgment of the trial court is affirmed.

**Facts**

On or about August 13, 2006, Ralph Patton Combs and John Piazza entered into a written contract for Mr. Piazza's purchase of approximately 683.71 acres of real property owned by Mr. Combs in Howard County for $1,000,000.00. At Mr. Piazza's suggestion, both parties were represented by legal counsel. Pursuant to the contract, Mr. Piazza deposited earnest money in the sum of $20,000.00 with a title company to be held in escrow until the closing of the contract. Closing of the transaction was set for November 22, 2004. This date was extended by agreement of the parties and in accordance with the terms of the contract to December 22, 2004.

On or about December 16, 2004, Mr. Piazza through counsel requested of Mr. Combs's counsel an additional extension of the December 22, 2004, closing date. This request was denied by e-mail from Mr. Combs's counsel to Mr. Piazza's counsel on or about December 20, 2004. Mr. Piazza contacted Mr. Combs by telephone on December 21, 2004. What occurred during this conversation was disputed at trial.

Mr. Piazza testified that he explained to Mr. Combs that he was ready, willing, and able to close on December 22, 2004, but was requesting an extension to enable him to complete the surveys and secure more favorable financing. According to Mr. Piazza, he and Mr. Combs reached a verbal agreement to extend the closing date of the contract to no later than January 30, 2005. In consideration of the agreement to extend the closing date, Mr. Piazza agreed to deposit an additional $5,000 in escrow with the title company. According to Mr. Piazza, all non-conflicting terms of the written contract were applicable. When Mr. Piazza suggested to Mr. Combs that a written extension should be executed, Mr. Combs was unwilling to execute another contract, stating that he "ain't signing no contract. You have my word. If you can't believe my word, we're not moving forward."

Mr. Combs asserted in his deposition testimony that he did not agree to anything with Mr. Piazza during their conversation on December 21, 2004. Acknowledging that Mr. Piazza requested that the

closing date be extended a second time, Mr. Combs claimed he told Mr. Piazza he did not want to sell him the property anymore. He denied agreeing to extend the closing date in exchange for an additional $5,000 being deposited into the escrow account. He further denied telling Mr. Piazza that his word was better than a contract.

On December 21, 2004, Mr. Piazza's counsel informed Mr. Combs's counsel in writing of the terms of the verbal agreement. It stated that the verbal agreement was made to extend the closing date to January 30, 2005, but that Mr. Combs was unwilling to sign additional documentation to that effect. It further stated Mr. Piazza would deposit the additional $5,000 by December 31, 2004. The letter also stated that, in reliance on the verbal agreement, Mr. Piazza declared the written contract void but the non-conflicting terms of the written contract governed the duties and responsibilities of the parties.

Closing did not occur on December 22, 2004. Mr. Piazza deposited an additional $5,000 in the escrow account with the title company on December 30, 2004. In a January 14, 2005, letter, George Smith, an attorney, informed Mr. Combs's counsel that he had been retained by Mr. Combs to represent him with respect to the written contract. In a January 18, 2005, e-mail, Mr. Piazza's counsel informed Mr. Combs's original counsel that the closing was tentatively scheduled for January 28, 2005, at 1:00 p.m. The email requested confirmation of that closing date and time. An employee of Mr. Combs's initial counsel responded to the email, stating that Mr. Combs's initial counsel was out of town. The email further stated: "Please confirm the closing is on Friday, January 28, 2005 at 1 p.m." On January 24, 2005, Mr. Combs's initial counsel advised Mr. Piazza's counsel that he no longer represented Mr. Combs.

The transaction did not close on or before January 30, 2005. On February 11, 2005, Mr. Combs executed a beneficiary deed for the subject real estate to his daughters and grandson. The deed was filed on February 18, 2005.

Mr. Piazza filed a petition seeking specific performance (Count I), damages for nonperformance under the contract (Count II), and damages for breach of the covenant of good faith and fair dealing (Count III) on February 14, 2005. On February 23, 2005, Mr. Combs's grandson, Mr. Call, petitioned for letters of guardianship and conservatorship over Mr. Combs. An amended petition for limited guardianship and limited conservatorship was filed on March 31, 2005. Letters of limited guardianship and limited conservatorship were issued to Mr. Call on April 13, 2005. Mr. Combs and Mr. Call filed their first amended answer on May 20, 2005, asserting denials and affirmative defenses including the statute of frauds. They also asserted a counterclaim for liquidated damages under the written contract.

Trial was had on March 6, 2006, and judgment was entered on April 10, 2006. The trial court found that a verbal contract, as testified to by Mr. Piazza, existed between Mr. Piazza and Mr. Combs. It further found there was no showing that anyone on behalf of Mr. Combs informed Mr. Piazza or his counsel that Mr. Combs had not agreed to the terms of the verbal agreement. The trial court found that Mr. Piazza relied on Mr. Combs's representations and statements in entering into the verbal agreement. Further, Mr. Piazza's actions in pursuance of the contract and verbal agreement constituted acts of partial and substantial performance. Mr. Piazza's actions were material, and to deny him the benefit of the parties' contract and

verbal agreement would be unjust. Accordingly, the trial court ordered specific performance of the contract and verbal agreement and denied Mr. Combs and Mr. Call's counterclaim.

Mr. Combs and Mr. Call's timely appeal followed.

### Standard of Review

In a court-tried case, "[t]he judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Hilligardt–Bacich v. Bacich,* 174 S.W.3d 11, 14 (Mo. App. E.D.2005)(citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). The evidence and inferences drawn therefrom are viewed in the light most favorable to the judgment, and all contrary evidence is disregarded. *Id.* Deference is given to the trial court's superior ability to judge witness credibility. *Id.* "The trial court is free to accept or reject all, part, or none of the testimony of a witness." *Id.* The trial court's conclusions of law are independently evaluated. *Johnson v. Cook,* 167 S.W.3d 258, 262 (Mo.App. E.D.2005).

### Point I

■ In their first point, Mr. Combs and Mr. Call argue the trial court erred in ordering specific performance of the original written contract and the verbal agreement to extend its closing date. They claim the trial court's jurisdiction was limited to a determination of whether to enforce the verbal agreement because Mr. Piazza's petition averred that the parties agreed not to close the written contract, declared the written contract void, and made a new verbal agreement. Mr. Combs and Mr. Call state that Mr. Piazza's petition and their answer pertained to the verbal agreement purportedly made in the December 21, 2004, conversation between Mr. Piazza and Mr. Combs. They assert that the trial court's jurisdiction was limited to the verbal agreement, and "[i]n entering its judgment, the trial court erroneously disregarded the pleadings and the trial position taken by [Mr. Piazza] that the contract he sued to enforce is the 'Verbal Agreement.'" Mr. Combs and Mr. Call assert that they defended against the action averred in the petition. They focus upon Mr. Piazza's averment that the written contract was void and state that "[r]egardless of the fact that they did or could have defended against specific enforcement of the written contract, [they] only had to defend against the claims stated in the petition." Mr. Combs and Mr. Call contend that the trial court erred in enforcing a contract different from the contract pleaded in the petition. Thus, they maintain the trial court was without jurisdiction to order specific performance of the written contract.

Relevant to this point, Mr. Piazza's petition contained the following averments. He and Mr. Combs entered into a written contract on August 13, 2004; the written contract was referred to as the "Written Agreement" and was attached to the petition as Exhibit B. The closing date was extended once to December 22, 2004, and Mr. Piazza's second request for an extension was denied by Mr. Combs's attorney on December 20, 2004. Mr. Piazza and Mr. Combs spoke regarding extending the December 22, 3004, closing date on December 21, 2004. Mr. Combs stated he would extend the December 22 closing date, but would not sign any documentation evincing his intent and desire to extend the closing date. This statement by Mr. Combs was referred to as the "Verbal Agreement" in the petition. The terms of the Verbal Agreement comprised mostly the same terms of the Written Agreement, with the following exceptions: (1) the clos-

ing date was extended to on or before January 30, 2005; (2) prior to December 31, 2004, Mr. Piazza would deposit an additional $5,000 in earnest money as additional security for Mr. Piazza's performance under the terms of the Verbal Agreement; (3) there would be no contingencies to Mr. Piazza's performance; and (4) all other non-conflicting terms of the Written Agreement would govern the duties and responsibilities of the parties as to the January 30, 2005, closing date. In reliance on the Verbal Agreement, Mr. Piazza declared the Written Agreement void and deposited an additional $5,000 in earnest money. Closing was set for January 28, 2005. Mr. Piazza was informed Mr. Combs would not close the Verbal Agreement on January 28, 2005. Mr. Piazza sought specific performance of the Verbal Agreement, alleging it adopted all non-conflicting provisions and terms of the Written Agreement.

Relevant to this point, Mr. Combs and Mr. Call's first amended answer alleged the following. There was not a verbal agreement. The evidence demonstrates that Mr. Piazza presumed the non-conflicting terms of the written contract would apply, and this presumption does not constitute a meeting of the minds. Mr. Piazza attempted to void the written contract, but appropriate notice was not given to Mr. Combs. The answer asserted the following denials and affirmative defenses. The written contract was not voided, and Mr. Piazza breached the written contract by failing to close on December 22, 2004. There was never a meeting of the minds for the verbal agreement. Mr. Combs and Mr. Call asserted a counterclaim for liquidated damages as provided for in the written contract. They alleged that the written contract was not voided, and Mr. Piazza breached it when he failed to close on December 22, 2004.

Relevant to this point, the trial court's judgment found that Mr. Piazza and Mr. Combs entered into a written contract on or about August 13, 2004. The closing date was extended to December 22, 2004. Mr. Piazza requested a second extension for the closing date; his request was denied by Mr. Combs's attorney on December 20, 2004. Mr. Piazza and Mr. Combs spoke on December 21, 2004, and reached a verbal agreement to extend the closing of the contract to no later than January 30, 2004. In consideration of the agreement to extend the closing, Mr. Piazza agreed to deposit an additional $5,000 in earnest money into the escrow account. All other terms and conditions of the parties' written contract remained in effect. Mr. Piazza suggested to Mr. Combs that a written extension should be executed, and although Ms. Combs agreed to the extension, he declined to memorialize the modification by executing a written document, stating that Mr. Piazza had his word and that should be sufficient. Mr. Piazza deposited an additional $5,000 in the escrow account and made plans to close on January 28, 2005. The evidence demonstrates:

> the existence of a comprehensive verbal agreement by and between [Mr. Piazza] and [Mr. Combs] to extend the December 22, 2004 closing to a date on or before January 30, 2005, in exchange for [Mr. Piazza's] deposit of an additional $5,000.00 in earnest money, and that all other non-conflicting provisions of the original contract would remain in full force and effect.

The court concluded a valid agreement between Mr. Piazza and Mr. Combs existed and ordered specific performance of the parties' contract and verbal agreement modification. Accordingly, it ordered, adjudged and decreed "specific performance of the parties' contract and verbal agreement." Mr. Combs and Mr. Call's counterclaim was denied.

The pleadings and the trial court's judgment all pertained to the written contract and a verbal agreement to extend the closing date. While Mr. Piazza averred that the written contract was void, he also averred that the verbal agreement contained the same terms as the written contract, with a few explicitly identified exceptions. Thus, Mr. Piazza in essence alleged the existence of one contract, the terms of which were set forth in the written document and the modifying verbal agreement. The petition identified the written contract, asserted that the terms of the written contract constituted, with a few explicitly identified exceptions, the terms of the contract he sought to have enforced, and had the written contract attached as an exhibit. The judgment found and enforced the same. *See, e.g., Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo.App. W.D.2006)(" 'In construing a judgment, a court must examine and consider the language of the judgment in its entirety. The intent of the court must be determined from all parts of the judgment, and words and clauses are to be construed according to their natural and legal import.' "). Any contention that Mr. Piazza pleaded one contract and the trial court enforced another contract is without merit.

The point is denied.

### Point II

■ In their second point, Mr. Combs and Mr. Call argue the trial court erred in ignoring Mr. Combs's deposition testimony and ordering specific performance. They claim Mr. Combs is presumed to be a competent witness. They further contend that the judgment is against the weight of the evidence because (1) Mr. Call was appointed limited guardian for Mr. Combs and limited conservator of his estate and (2) Mr. Combs's deposition testimony that he did not agree to extend the written contract or create a new verbal contract is more certain, clear, emphatic, and credible than Mr. Piazza's testimony.

Mr. Combs asserted in his deposition testimony that he did not agree to anything proposed by Mr. Piazza during their conversation on December 21, 2004. Acknowledging that Mr. Piazza requested that the closing date be extended a second time, Mr. Combs claimed he told Mr. Piazza he did not want to sell him the property anymore. He denied agreeing to extend the closing date in exchange for an additional $5,000 being deposited into the escrow account. He further denied telling Mr. Piazza that his word was better than a contract.

On appeal, Mr. Combs and Mr. Call assert that Mr. Combs's deposition testimony "should have been considered and believed by the trial court, but it was not even considered." They reach this conclusion because, in its judgment, the trial court did not determine the credibility of Mr. Combs's deposition testimony as part of the grounds for its decision. Mr. Combs and Mr. Call assert that the trial court failed to consider Mr. Combs's deposition testimony because it impliedly determined that Mr. Combs was not a competent witness as a limited guardian and limited conservator had been appointed before his deposition was taken. Mr. Combs and Mr. Call note that, pursuant to section 475.078.3, "[a] person who has been adjudicated partially incapacitated or partially disabled or both shall be presumed to be competent." Mr. Combs and Mr. Call further state that "[t]here is simply no determination of [Mr. Combs's] credibility by the trial court to which the appellate court can defer." They contend that Mr. Combs's deposition testimony "is the more certain, clear and credible testimony for the issues in this case on appeal." They claim Mr. Piazza contradicted himself

while testifying and that his testimony is further contradicted by the documentary evidence presented at trial.

■ Mr. Combs and Mr. Call requested that the trial court make specific findings of fact pursuant to Rule 73.01(c). As specific findings of fact were requested, they claim that "the rule that all fact issues upon which no specific findings are made by the trial court shall be considered as having been found in accordance with the result reached does not apply." This assertion is incorrect. Rule 73.01(c) allows a party to request a brief opinion containing a statement of the grounds for the trial court's decision and findings of fact. It further states: "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." Although Mr. Combs and Mr. Call argue, without supporting authority, otherwise, "[t]his provision applies even where the losing party requested findings of fact, but the trial court failed to comply with such request." *P.I.C. Leasing, Inc. v. Roy A. Scheperle Constr. Co.*, 489 S.W.2d 219, 222 (Mo.App.1972)(citing *Goldstein v. Studley*, 452 S.W.2d 75, 78–79 (Mo.1970); *Brusca v. Gallup*, 429 S.W.2d 780, 782–83 (Mo.App.1968)).[1]

■ The record does not support the claim that the trial court failed to consider Mr. Combs's deposition testimony. Mr. Combs and Mr. Call cite the trial court's failure to make a determination as to Mr. Combs's credibility as evidence that it was not considered. Mr. Combs and Mr. Call did not request the trial court determine the credibility of Mr. Combs's deposition testimony in their request for findings of fact. "If a party desires findings of fact and conclusions of law, it is that party's

duty to identify the issues to be included." *In re Marriage of Colley*, 984 S.W.2d 163, 171 (Mo.App. S.D.1998). As they did not request that the trial court make a specific finding regarding Mr. Combs's credibility, they cannot complain that such a finding was not made.

Likewise, no evidence demonstrates the trial court failed to consider Mr. Combs's deposition testimony because it determined that Mr. Combs was not a competent witness as a limited guardian and limited conservator had been appointed before his deposition was taken. As noted, *supra*, section 475.078.3 sets forth a presumption that Mr. Combs was competent, as he was adjudicated only partially incompetent or disabled. Mr. Combs and Mr. Call do not provide a citation to the legal record or judgment or provide any rationale for this conclusion. In its judgment, the trial court found, *inter alia*, that letters of limited guardianship and limited conservatorship were petitioned for in February and March 2005, and issued in April 2005. The trial court found that Mr. Combs's deposition was taken in May 2005, after the letters were issued. The trial court also found that Mr. Combs had the mental capacity to contract for the sale of his real property from August 2004 through February 2005. The trial court did not find that Mr. Combs was incompetent.

■ Mr. Combs and Mr. Call further state that "[t]here is simply no determination of [Mr. Combs's] credibility by the trial court to which the appellate court can defer." They contend that Mr. Combs's deposition testimony "is the more certain, clear and credible testimony for the issues in this case on appeal." They claim Mr. Piazza contradicted himself while testify-

---

1. These older cases refer to Rule 73.01(b), which stated in relevant part: "All fact issues upon which no specific findings are made

shall be deemed found in accordance with the result reached."

ing and that his testimony is further contradicted by the documentary evidence presented at trial. "In a court-tried case, the credibility of witnesses is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Riverside–Quindaro Bend Levee Dist., Platte County, Mo. v. Mo. Am. Water Co.*, 117 S.W.3d 140, 154 (Mo. App. W.D.2003). "An appellate court will not substitute its judgment for that of the trial court judge's on credibility issues." *Id.* at 155. "An appellate court defers, moreover, to the trial court when there is conflicting evidence, even if there is evidence which would support a different conclusion." *Id.* Given the standard of review, as clarified above, any contention that Mr. Combs's testimony was more credible than Mr. Piazza's testimony is without merit.

Finally, Mr. Combs and Mr. Call argue that, because Mr. Combs's testimony was presented to the court as a deposition, the trial court did not have an opportunity to judge his credibility, and deference to the trial court's assessment of his credibility is not required. *See In re Adoption of R*, 31 S.W.3d 551, 555 n. 4 (Mo.App. S.D.2000). They acknowledge that Mr. Piazza's and Mr. Combs's testimonies were contradictory and that portions of Mr. Piazza's testimony supports the judgment. They urge this court to deem Mr. Combs's testimony more credible than Mr. Piazza's testimony, however, and claim this court need not give deference to the trial court because Mr. Combs did not testify before the court as the trier of fact but instead testified via deposition. Mr. Piazza testified in person at trial, however. Thus, the trial judge had the opportunity to assess his credibility in a manner that this court cannot from the record. For this reason, deference is still given to the trial court's credibility determinations.

The point is denied.

## Point III

In their third point, Mr. Combs and Mr. Call argue the trial court erred in ordering specific performance of a verbal agreement for the sale of real estate. They claim specific performance is barred by the statute of frauds because the evidence does not support a finding of: (1) agreement on essential contract terms; (2) benefit to Mr. Combs; (3) sufficient part-performance; (4) detrimental reliance; (5) disastrous consequences resulting from acts of which Mr. Combs had knowledge; (6) gross injustice; or (7) any other equitable ground to avoid the averred statute of frauds defense.

The statute of frauds, set forth in section 432.010, states:

No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

"To satisfy the statute of frauds the entire agreement must be in writing and a contract which is partly in writing and partly oral is treated as a verbal contract in determining whether the contract is within the inhibition of the statute of frauds." *Overfield v. Garner,* 595 S.W.2d 446, 447 (Mo.App. S.D.1980)(quote marks and citation omitted).

Mr. Combs and Mr. Call note that they requested the trial court make findings of fact as to any avoidance of the statute of frauds. They claim the judgment fails to mention the statute of frauds or make the requested findings. Mr. Combs and Mr. Call do not present the trial court's purported failure to make requested findings of fact as a point on appeal, however. Thus, this argument is not properly preserved for appellate review. *See Cordes v. Williams,* 201 S.W.3d 122, 129 (Mo.App. W.D.2006)(" 'Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review.' " (citation omitted)). Furthermore, as to Mr. Piazza's claim for specific performance (Count I), Mr. Combs and Mr. Call did not request that the trial court make a specific finding as to the applicability of the statute of frauds. They requested a finding as to the statute of frauds with respect to Mr. Piazza's claim for damages for breach of contract (Counts II and III). As the trial court ordered specific performance and did not award damages for breach of contract, it did not fail to make the specific findings requested by Mr. Combs and Mr. Call. Moreover, as will be demonstrated, *infra,* the trial court made a finding that one of the grounds for avoiding the statute of frauds exists. Finally, assuming, *arguendo,* that the trial court should have made specific findings regarding the applicability of the statute of frauds, the judgment may still be affirmed. " '[F]ailure of a trial court to issue findings which were proper-

ly requested does not always require reversal.' " *Clark v. Clark,* 20 S.W.3d 562, 566 (Mo.App. W.D.2000) (quoting *In re Marriage of Flud,* 926 S.W.2d 201, 204 (Mo.App.S.D.1996)). " 'If the record is sufficient to support the judgment, the appellate court will affirm.' " *Id.* (quoting *Flud,* 926 S.W.2d at 204). The record is sufficient, as will be demonstrated, *infra.*

"An oral contract is valid and enforceable, irrespective of the statute of frauds when there is proof of partial performance in furtherance of the agreement." *Shumate v. Dugan,* 934 S.W.2d 589, 592 (Mo.App. S.D.1996). Exceptions to the statute of frauds " 'should be exercised most sparingly.' " *Id.* (quoting *Jones v. Linder,* 247 S.W.2d 817, 825 (Mo.1952)).

> [T]hree elements must be established to avoid the effect of the statute of frauds and secure the performance by a court of equity of a parol agreement. There must be proof: (1) of the performance of acts by the proponent which are cogent evidence of the existence of the pleaded contract; (2) of the terms of the verbal contract by clear, cogent, unequivocal and convincing testimony; and (3) that the acts, referred to in the first mentioned element, were done in reliance on the contract and that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto, sometimes referred to as "virtual fraud, constructive fraud, or equitable fraud."

*Id.* at 593 (quoting *Pointer v. Ward,* 429 S.W.2d 269, 272–73 (Mo.1968)).

"Equitable exceptions to the Statute of Frauds are well established under the common law of this State." *Mika v. Central Bank of Kansas City,* 112 S.W.3d 82,

88 (Mo.App. W.D.2003). "Various reasons have been stated for the intervention of equity." *Jones,* 247 S.W.2d at 819. "These have been expressed in such phrases as: to prevent fraud, to prevent a virtual fraud, to prevent a constructive fraud, to prevent an equitable fraud, or to prevent the use of the statute of frauds as an instrument to perpetrate a fraud." *Id.* "An examination of many cases from this and other jurisdictions will justify the conclusion that equity will intervene to prevent a gross injustice or deep-seated wrong to one of the contracting parties whether there is in fact any fraud involved; i.e., 'fraud' within the ordinary meaning thereof." *Id.*

 The equitable exceptions "generally fall into three broad categories: (a) to prevent perpetration of a fraud by application of the bar of the statute; . . . (b) by application of promissory estoppel; . . . [and] (c) where there has been partial or full performance." *Mika,* 112 S.W.3d at 88–89 (citations omitted). "All three categories are somewhat related and generally can be said to be used to prevent fraud or gross injustice." *Id.* at 89. "The exceptions are rigidly scrutinized and sparingly invoked so that relief will be denied if there is doubt as to whether there has been a meeting of minds or full understanding of the terms sought to be enforced." *Id.* (quote marks and citations omitted).

 "[One] equitable exception to the statute of frauds is where there has been partial performance in furtherance of the agreement." *Johnson v. Cook,* 167 S.W.3d 258, 264 (Mo.App. E.D.2005).

A party may avoid the bar of the statute of frauds if the party has performed acts that, in themselves, are evidence of the existence of a contract to convey. The acts must have been done in reliance on the contract, and the positions of the parties must have been so materially changed that it would be grossly unjust to allow the other party to rely on the statute of frauds. If partial performance is established, the party asserting a contract exists may introduce parol evidence of the verbal terms of the contract. If by such parol evidence the complete, definite, fair contract to convey that has been pleaded is proved by clear, cogent, unequivocal, and convincing testimony, such party is entitled to relief.

*Id.* (citations omitted). "Again, this exception is rigidly scrutinized and sparingly invoked; relief will be denied if there is doubt as to whether there has been a meeting of the minds or full understanding of the terms sought to be enforced." *Id.*

The trial court found "[t]hat [Mr. Piazza's] actions in pursuance of the contract and verbal agreement constituted acts of partial and substantial performance. [Mr. Piazza's] actions were material, and to deny [Mr. Piazza] the benefit of the parties' contract and verbal agreement would be unjust." When Mr. Piazza learned that his request for a second extension of the closing date was denied by Mr. Combs's attorney, he called Mr. Combs to speak with him. Mr. Piazza called Mr. Combs because the denial of the extension "didn't make sense" given their previous conversations. Upon telephoning Mr. Combs, Mr. Piazza first verified that his attorney denied the extension. Mr. Piazza then explained to Mr. Combs that he was prepared to close on the December closing date but additional time to arrange a different financing mechanism and to secure additional information to obtain the different financing would benefit him. Mr. Piazza informed Mr. Combs that he would appreciate the courtesy if the extension were allowed. He explained to Mr. Combs the time and effort he had expended up to

that point. His efforts included obtaining surveys, interacting with local lenders in an effort to secure favorable long-term financing, and working on an employment contract. Mr. Combs then agreed to extend the closing date to January 30, 2005, in exchange for Mr. Piazza depositing an additional $5,000 with the title company. After Mr. Combs agreed to extend the closing date, Mr. Piazza stated that a written extension of the contract would be required. Mr. Combs refused, stating that if his word was not sufficient, they did not have an agreement.

The same day as the telephone conversation, Mr. Piazza's counsel sent a letter to Mr. Combs's counsel outlining the telephone conversation. The letter stated that the additional $5,000 would be deposited with the title company by December 31, 2004. Mr. Piazza transferred the additional $5,000 in the escrow account on December 30, 2004. Mr. Piazza called the title company and explained how he and Mr. Combs were proceeding. He also had his attorney coordinate the January closing date with the title company. He had surveys of the land completed. Mr. Piazza received several offers from persons interested in purchasing pieces of the property. The offers would have allowed Mr. Piazza to realize a profit. Mr. Piazza also made efforts toward capitalizing upon the land's timber, game, and fishing supply. While Mr. Piazza expended time and money in anticipation of closing in December, he spent additional time and money securing financing and preparing for the extended January closing. Mr. Piazza was prepared to close on January 28, 2005.

▮ Mr. Combs and Mr. Call argue that the trial court erred in ordering specific performance for a variety of reasons. They assert that the verbal modification did not require Mr. Piazza to take any further acts, and, thus, there was nothing he could have done to constitute part performance. They further assert that the acts taken by Mr. Piazza to close in January 2005 were ancillary and preparatory and were not known by Mr. Combs. Mr. Combs and Mr. Call rely upon *Jones v. Linder*, 247 S.W.2d 817 (Mo.1952), wherein the court stated:

> We think, however, the view most consonant with the purpose to be accomplished is that anticipatory, preparatory, collateral, and ancillary acts are generally not sufficient part performance to call for an exception to the provisions of the statute of frauds, but that some acts done in reliance upon a sufficiently established verbal agreement to convey, and done with the knowledge of the other party to the agreement, even though not strictly in *execution* of the contract, may be so disastrous in their consequences to the one performing as to imperatively call for specific performance of an oral agreement.

*Id.* at 825 (citations omitted); *see also Pointer*, 429 S.W.2d at 273. *Jones* also stated, however:

> We think that once the oral contract to convey has been definitely established, after preliminary proof of acts making parol evidence of the terms of the contract admissible, there is no exact criterion or measuring device which can be arbitrarily applied to determine what acts of part performance are essential. Each case must depend upon its own particular facts with the primary purpose in view of preventing the perpetration of a deep-seated wrong because of the application of the statute. Thus, there may be cases in which a party so changes his position in reliance upon a verbal contract to convey that to prevent the enforcement of that contract would amount to a deep-seated injustice, even though the act done in reliance was not

the taking of possession or the making of valuable improvements; and even though the act was not done in *execution* of the provisions of the verbal contract; and even though the act done was, in a sense, in preparation for, ancillary or collateral to, or in anticipation of, the execution of the provisions of the contract.

247 S.W.2d at 824–25. Such is the case here. Mr. Piazza informed Mr. Combs during their December 21, 2004, telephone conversation that he would use the extended closing time to secure more favorable financing and would deposit the $5,000 by the end of the month. Mr. Piazza did that. Further, Mr. Piazza's counsel communicated and coordinated with Mr. Combs's counsel, or former counsel until he was notified of the new counsel, regarding the extended closing date. Mr. Piazza was prepared to close on January 28, 2005, having paid financing fees to secure the more favorable financing. Finally, Mr. Piazza had taken substantial steps toward developing the property, selling portions for a profit, and harvesting the resources on the property. Mr. Piazza fully complied with his duties under the contract, and at no time did Mr. Combs or any party representing him inform Mr. Piazza that closing would not occur in January 2005. This court affirmed an order of specific performance in *Sappington v. Miller*, 821 S.W.2d 901, 904 (Mo.App. W.D.1992), where the person seeking specific performance "took every reasonable step which he could to consummate the agreement." Likewise, the particular facts of this case support the judgment of specific performance.

Mr. Combs and Mr. Call also argue that Mr. Piazza's claimed acts resulting in damages to him do not show and do not constitute reliance on the agreement to extend the closing date. They claim Mr. Piazza's acts purporting to demonstrate reliance were done in reference to the written contract before the December 21, 2004, telephone call "except for ... expenses expended ... in the 'wooing process' to attract investors and other matter related to ... financing ... [that] are unrelated to any condition or term of the verbal agreement alleged." Their argument acknowledges Mr. Piazza's acts done in reliance on the agreement. It is based, however, on their prior argument in Point I that the written contract and verbal agreement to extend the closing date were two separate contracts wherein none of the terms of the written contract were incorporated into the verbal agreement. This is incorrect. As testified to by Mr. Piazza and found by the trial court, the verbal agreement incorporated all nonconflicting terms of the written contract. The conflicting terms were the extended closing date and the deposit of an additional $5,000 in the escrow account. Though Mr. Combs and Mr. Call cite Mr. Combs's testimony in support of a contrary conclusion, Mr. Piazza testified: "I had just a straight up conversation with [Mr. Combs] that said that I asked for an extension of an agreement that we'd already reached, and we agreed to that extension." The trial court was free to believe Mr. Piazza and disbelieve Mr. Combs. *Hilligardt–Bacich*, 174 S.W.3d at 14.

Mr. Combs and Mr. Call further argue that nothing Mr. Piazza did was of any benefit to Mr. Combs, noting that this is a "most important consideration in determining whether equity will intervene." *Jones*, 247 S.W.2d at 825. Mr. Piazza deposited an additional $5,000 in the escrow account with the title company. This was done with Mr. Combs's concurrence and in order to provide him with additional security while closing was pending. This money was returned to Mr. Piazza by vir-

tue of a court order dated September 16, 2005, but it was deposited to Mr. Combs's benefit. Further, the consideration of benefit to Mr. Combs does not outweigh the other factors considered above in determining whether specific performance was appropriate. *See Id.* at 824–25.

Mr. Combs and Mr. Call also claim that denying specific performance would not perpetuate a "gross injustice or deep-seated wrong" with "disastrous ... consequences" on Mr. Piazza. *Id.* at 819, 825. The facts set forth, *supra*, demonstrate otherwise. Mr. Piazza expended considerable time and resources preparing to utilize the property after he purchased it. He gathered information about the property's resources and developed business relationships and agreements with persons interested in acquiring those resources. He expended funds in furtherance of the venture. He entered into agreements with persons for the purchase of portions of the property once he owned it. Mr. Piazza was fully prepared to close, having completed all necessary steps to secure financing.

Mr. Combs and Mr. Call argue that Mr. Piazza failed to prove a clear, explicit, and definite agreement as to each essential term of the contract. *See Johnson,* 167 S.W.3d at 263. The essential terms of a contract include: "(1) the parties; (2) the subject matter; (3) the promises upon both sides; (4) the price; and (5) the consideration." *Gillespie v. Pulsifer,* 655 S.W.2d 123, 125 (Mo.App. W.D.1983). Mr. Piazza testified that the discussion in the December 21, 2004, telephone call primarily concerned "an agreement to extend the closing" in consideration for an additional deposit of $5,000. He stated he and Mr. Combs did not discuss the price because the terms of the written contract, including the sales price, would apply. In his testimony, Mr. Piazza stated that he

and Mr. Combs "assumed" or "presumed" based on the "spirit of the conversation" that the non-conflicting terms of the written contract would apply. Mr. Combs and Mr. Call seize upon this language and advocate that "evidence of unilateral declarations and presumptions of contracts terms does not prove a meeting of the minds as to contract terms and is not sufficient to prove an enforceable contract in this case." As discussed, the evidence supports the trial court's finding that the verbal agreement incorporated all non-conflicting terms of the written agreement. A clear, explicit, and definite agreement as to each essential term of the contract was demonstrated.

Mr. Combs and Mr. Call claim the additional $5,000 Mr. Piazza deposited into the escrow account is not sufficient part performance to avoid the statute of frauds. The validity of this rule is questionable. Mr. Combs and Mr. Call cite *Johnson,* 167 S.W.3d at 264, for this proposition. *Johnson* stated: "Nonetheless, part payment of the purchase price of real estate, by itself, does not constitute partial performance." It cited *Gillespie v. Pulsifer,* 655 S.W.2d 123, 126 (Mo.App. W.D.1983), for this proposition. *Gillespie* in turn cited *Alonzo v. Laubert,* 418 S.W.2d 94, 97 (Mo.1967), for this proposition. *Alonzo* stated:

> This brings us back to the doctrine of part performance which is succinctly stated, 'Where one party relying on an oral contract has so far performed his part of it that it would be perpetrating a fraud on him to allow the other to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute.' 37 C.J.S. Frauds, Statute of s 248. It is made clear that this is purely an equitable doctrine and *no amount of part performance but only complete and*

*full performance by at least one party will at law remove the case from the statute.*

*Alonzo*, 418 S.W.2d at 97 (emphasis added). The requirement of full performance, as set forth in *Walker v. Bohannan*, 243 Mo. 119, 147 S.W. 1024 (1912), "has been relaxed in recent years to require only partial performance upon the party seeking the benefit of the oral contract, where the party has so materially changed his position that the use of the statute of frauds to deny enforcement of the agreement would, itself, amount to a fraud." *Straatmann v. Straatmann*, 809 S.W.2d 95, 99 (Mo.App. E.D.1991). Nonetheless, more than partial payment was demonstrated in this case.

 Finally, Mr. Combs and Mr. Call state that Mr. Piazza's petition did not properly plead a claim for specific performance. They do not explain how the pleadings were deficient. Moreover, the point relied on pertains to the evidence presented and does not reference the pleadings. Accordingly, any complaint with respect to the sufficiency of the pleadings is not preserved for appellate review. *See Cordes*, 201 S.W.3d at 129.

Mr. Combs and Mr. Call focus throughout their briefs on contradictory evidence presented at trial. This is inappropriate given the standard of review, wherein the evidence and inferences drawn therefrom are viewed in the light most favorable to the judgment, and all contrary evidence is disregarded. *Hilligardt–Bacich*, 174 S.W.3d at 14. When viewed consistent with the standard of the review, the trial court's judgment survives appellate scrutiny.

The point is denied.

### Conclusion

The trial court's judgment did not exceed its jurisdiction as it granted the relief requested by Mr. Piazza's petition. Nothing in the record suggests the trial court failed to consider Mr. Combs's deposition testimony, and the trial court was free to find Mr. Piazza more credible than Mr. Combs. Finally, specific performance was not barred by the statute of frauds as Mr. Piazza presented sufficient evidence demonstrating partial performance in furtherance of the agreement. All three points are denied, and the judgment of the trial court is affirmed.

All concur.