DANIEL E. SCOTT, J.-OPINION AUTHOR
Mary Sue Sanchez (nee Barger) appeals a judgment compelling her to sell land to her brother Paul. We affirm.[1]
Background
Because specific fact findings were neither requested nor made, we consider all contested fact issues to have been found in Paul's favor per Rule 73.01(c)[2] and summarize the facts accordingly.
Mary Sue, Paul, and their siblings jointly inherited their mother's land tract in 2002. Discussions among themselves and with a surveyor about splitting up the property led to the 2004 staking of a proposed partition.
Mary Sue was in need of money. After a few loans from Paul, but still needing money, Mary Sue offered to sell Paul some of her inheritance land. She signed and dated ("12/22/04") a handwritten document later admitted at trial as Exhibit 8. It states:
Received from Paul Spencer
$2900.00 for land belonging to me
south of line of Arch's S.E corner
and Paul's N.W. corner,
Leaving a balance of $3,000
Payment of BAL at colsing [sic ]
A crudely-drawn map follows. A line runs from a corner of a section marked "Arch" to a corner of another section marked "Paul" and bisects a section labeled "Mary S."
Thereafter, Archie filed a lawsuit that tied up the inherited land for years, but finally effectuated a formal division among the siblings.[3] In the meantime, Paul had paid Mary Sue all but $300 of the Exhibit 8 price, so he contacted an abstract office in 2012 to close that sale. Mary Sue refused Paul's tender of the last $300 or to close the sale, calling it "too much land for not enough money."
Witnesses at the trial of Paul's specific-performance claim included Paul, Mary Sue, and the above-mentioned surveyor who identified various aerial and survey maps and his legal description of the disputed tract. Adopting that legal description, the court entered judgment for specific *522 performance of Exhibit 8 and denied all other claims for relief.[4]
Points on Appeal
Mary Sue's first point on appeal challenges Exhibit 8's contractual sufficiency generally, charging that it was merely an "agreement to agree" that lacked essential contract elements and was too indefinite and uncertain for specific performance. Her second point is more specific, citing our § 432.010 statute of frauds in urging that Exhibit 8's legal description was inadequate. Supporting arguments for each point overlap enough that we analyze them together, guided by general principles previously noted by this court:
A writing satisfies the statute of frauds "memorandum" requirement if it sets forth the essential terms of a contact. The "essential terms" of a contract for the sale of real estate are: the parties, the subject matter, the consideration, the price, and promises upon both sides. When these essential provisions exist in a document, it is specifically performable even though it may leave something to be desired in draftsmanship or could have been more clearly stated. A writing need not be an explicit and complete contract, and the terms therein need not be definite, as long as the substance of the agreement appears from the writing. The terms may be "made certain ... when the circumstances are shown" by extrinsic evidence.
Estate of Looney , 975 S.W.2d 508, 515 (Mo.App. 1998) (citations omitted).
Analysis
Most of Mary Sue's arguments cite her own testimony or other evidence contrary to the judgment. This violates our standard of review, "wherein the evidence and inferences drawn therefrom are viewed in the light most favorable to the judgment, and all contrary evidence is disregarded." Piazza v. Combs , 226 S.W.3d 211, 227 (Mo.App. 2007). All such arguments therefore fail without further need for discussion.
As to Point II and the adequacy of Exhibit 8's property description ("land belonging to me south of line of Arch's S.E corner and Paul's N.W. corner") as converted by the testifying surveyor to metes-and-bounds form and adopted by the court in its judgment,
case law clearly establishes that the statute of frauds does not compel rejection of a contract because of imperfections or deficiencies in the land description if the "location in any manner otherwise appears from the writing, or, if the property can be identified with reasonable certainty with the aid of the data supplied by the instruments and a consideration of the attending circumstances."
Looney , 975 S.W.2d at 516 (quoting Ray v. Wooster , 270 S.W.2d 743, 750 (Mo. 1954) ).
As in Looney , Exhibit 8's land description is sufficient to satisfy the statute of frauds when viewed in light of all the evidence, Mary Sue's contrary arguments notwithstanding.[5] Even were that *523 not the case, "a party may avoid the bar of the statute [of frauds] if he has performed acts that are evidence of the existence of a contract to convey." Looney , 975 S.W.2d at 519. Here, both parties' actions evidenced a contract to convey. Mary Sue signed Exhibit 8 to sell described "land belonging to me," then Paul paid what Exhibit 8 required and Mary Sue accepted those monies, refusing only the final $300 payment in her effort to avoid closing the sale.
As to Point I and Exhibit 8's general contractual sufficiency, again "[t]he 'essential terms' of a contract for the sale of real estate are: the parties, the subject matter, the consideration, the price, and promises upon both sides." Id. at 515. Exhibit 8 addresses all of these, so "it is specifically performable even though it may leave something to be desired in draftsmanship or could have been more clearly stated." Id.
Mary Sue's cited cases are factually inapposite. We also reject her legally-unsupported assertion that specific performance cannot lie because she signed Exhibit 8 prior to formal partition of the siblings' jointly-inherited tract. Finally, although specific performance of a written land contract "may be withheld if the contract is inequitable, results in an unconscionable bargain, or produces unfairness" ( Looney , 975 S.W.2d at 519-20 ), Mary Sue raises no such complaint on appeal.
Conclusion
Extended discussion is unnecessary. "When viewed consistent with the standard of the review, the trial court's judgment survives appellate scrutiny." Piazza , 226 S.W.3d at 227. Judgment affirmed.
JEFFREY W. BATES, J.-CONCURS
WILLIAM W. FRANCIS, JR., J.-CONCURS

As occurred at trial, we generally refer to the parties and their sibling Archie by first names only. During the period between contracting and trial, Mary Sue wed Mr. Sanchez and conveyed her land into their family trust, resulting in Mr. Sanchez as co-trustee being joined as a defendant and judgment also entered against him. Only Mary Sue filed notice of appeal. Given our disposition, we need not consider difficulties that may have ensued had she, alone, prevailed on appeal.

Rule references are to Missouri Court Rules (2017); statutory citations are to RSMo as amended through 2016.

Although the court at this trial took judicial notice of that earlier case file, Mary Sue has omitted it from our record on appeal. We glean from the record we have that the formal division occurred in or about October 2010.

Five other counts total (petition and counterclaim), including Paul's unsuccessful claim for another land parcel separate from the tract at issue in this appeal. Neither party appeals any of those rulings.

Summarized by Mary Sue's assertion that Point II comes down to "a question of credibility between opposing parties based purely on parol evidence," which seemingly overlooks both Exhibit 8 and that we disregard evidence contrary to the judgment. Piazza , 226 S.W.3d at 217. "Deference is given to the trial court's superior ability to judge witness credibility. The trial court is free to accept or reject all, part, or none of the testimony of a witness." Id. (citation and internal quotation marks omitted).