Eda M. JOHNSON, Plaintiff/Appellant,

v.

George H. COOK and Patricia S. Cook,
Defendants/Respondents.

No. ED 85285.

Missouri Court of Appeals,
Eastern District,
Division One.

July 19, 2005.

Ronald R. Fralicx, Warrenton, MO, for appellant.

George H. Cook & Patricia S. Cook, Wright City, MO, pro se.

SHERRI B. SULLIVAN, J.

*Introduction*

Eda M. Johnson (Appellant) appeals from a trial court judgment in favor of George H. Cook (Mr. Cook) and Patricia S. Cook (Mrs. Cook) (collectively Respondents), husband and wife, and against Appellant on her Petition for Specific Performance and Breach of Contract (Petition) regarding a purported real estate transaction. We affirm in part and reverse and remand in part.

*Factual and Procedural Background*

In January 2001, Appellant purchased a 9–acre parcel of real estate from Respondents for $43,000. Appellant built a house and now lives on the property. Adjacent to the 9 acre parcel is a 3.68–acre parcel of real estate also owned by Respondents. Around the time Appellant purchased the 9–acre parcel, Appellant and Mr. Cook discussed Appellant having the right of first refusal to purchase the 3.68–acre parcel, which Mr. Cook also was interested in selling.

Mr. Cook employed Appellant as an independent contractor from May 2001 until August 2002. Appellant earned commissions for soliciting clients to file siding claims. In December 2001, Mr. Cook was doing business as a sole proprietor using the name Magic Marketing.

On December 11, 2001, Appellant entered into an Agreement to Sell Real Estate (the Agreement) with Respondents as "Seller" and Appellant as "Buyer." Paragraph one of the Agreement states: "LEGAL DESCRIPTION of real estate located in WARREN County, State of MISSOURI:" "WARREN" and "MISSOURI" are handwritten. Nothing is written, typed or referred to in the space after the colon following "MISSOURI."

The Agreement includes a purchase price of $27,000 cash, with a deposit of $500 to be held in trust by Mr. Cook, and a handwritten closing date of "asap." The Agreement is signed by Appellant and Mr. Cook. The Agreement is not signed by Mrs. Cook.

On October 9, 2002, Appellant filed a two-count petition (the Petition) against Respondents. Count I sought specific performance of the Agreement. Count II sought damages for breach of contract. Each count also included a prayer "for such other relief as the court may deem proper."

Among the exhibits submitted into evidence by Appellant at trial on the Petition were the following. Exhibit E was a Boundary Survey prepared for Mr. Cook in January 2001 indicating two neighboring parcels of land in Warren County, Missouri, one labeled Parcel "A" and the other labeled Parcel "B." Parcel "A" is the property Appellant purchased from Respondents in January 2001. Parcel "B" is the property intended as the subject matter of the Agreement.

Exhibit B was a receipt for a wire transfer on December 27, 2001 from Appellant to "Magic Marketing, Inc." in the amount of $12,000. According to Appellant, the wire transfer was a payment towards the purchase price of the property under the Agreement, and she wired it to the Magic Marketing account because Mr. Cook did not have his personal checking account number available. Appellant testified that the $12,000 came from the proceeds, $68,000, from the sale of her house in California on December 26, 2001, and that she offered to pay Mr. Cook in full for the property but he said he did not need all of the money at that time. According to Mr. Cook, in December 2001, Magic Marketing was at risk of shutting down for two to three weeks and having to lay off everybody until an investor provided additional capital. Mr. Cook testified that Appellant asked him how much money was needed to sustain the company until the investor provided the additional capital and that he indicated about $12,000 to $15,000. Mr. Cook stated that because she thought it was "an opportunity of a lifetime," Appellant offered to loan the company $12,000 from the California house sale proceeds.

Exhibit C was a personal check dated December 31, 2001 from Appellant to

"George Cook" in the amount of $5,500. The check contains a notation of "Land."

The trial court entered a judgment in favor of Respondents and against Appellant. The parties did not request findings of fact. As to Count I, the court concluded that the Agreement violates the statute of frauds because the Agreement does not have Mrs. Cook's signature, who owns the property with Mr. Cook, and therefore the Agreement is void as to Mrs. Cook and unenforceable as to Mr. Cook. The court also concluded that the Agreement is void for vagueness because it does not contain a legal description of the property or a date for performance. As to Count II, the court concluded that the count is based on "common law breach over the sale of the land and it, too, violates the statute of frauds."

Appellant filed a Motion to Amend Judgment and/or Motion for New Trial, which the trial court denied. Appellant appeals from the trial court's judgment.

## Standard of Review

■■■ In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App. E.D.1998). Because the parties did not request findings of fact, and the trial court did not make specific findings of fact, we consider all controverted fact is-

sues as having been found in accordance with the result reached. Rule 73.01(c).[1] We independently evaluate the trial court's conclusions of law. *Mullenix–St. Charles Properties, L.P.*, 983 S.W.2d at 555. We defer to the trial court's superior ability to assess the credibility of witnesses. *Flooring Systems, Inc. v. Staat Constr. Co.*, 100 S.W.3d 835, 837 (Mo.App. E.D.2003).

## Discussion

■■■ Appellant raises five points on appeal.[2] In her first point, Appellant argues that the trial court erred in not ordering specific performance of the Agreement because the Agreement is legally enforceable against Respondents and Appellant was at all times ready, willing and able to perform.

The statute of frauds prohibits an action to be brought "upon any contract made for the sale of lands ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Section 432.010.[3]

■■■ Whether a writing satisfies the statute of frauds is a question of law. *Ahrens v. Dodd*, 863 S.W.2d 611, 613 (Mo. App. E.D.1992). To satisfy the statute of frauds, a writing must contain the essential terms of the contract, including the parties, the subject matter, the consideration or price, and the promises on both sides. *Id.* The subject matter, i.e., the real property to be conveyed, need not be fully

---

1. All rule references are to Mo. R. Civ. P.2005, unless otherwise indicated.

2. Respondents did not file a brief with this Court.

3. All statutory references are to RSMo 2000, unless otherwise indicated.

and accurately described as long as the writing affords means whereby identification may be made perfect and certain by parol evidence. *Id.* The writing must be a guide to find the property and must contain sufficient particulars to point out and distinguish the tract from any other. *Fox v. Courtney*, 111 Mo. 147, 20 S.W. 20, 21 (1892). The description cannot be supplied altogether by parol evidence. *Id.* A writing is insufficient where parol evidence is necessary to supply the description, or part thereof, to determine and to define the property and to show the intention and agreement of the parties as to the property. *Shy v. Lewis*, 321 Mo. 688, 12 S.W.2d 719, 721 (1928).

Appellant concedes in her brief that the Agreement did not contain the legal description of the property intended as the subject matter of the real estate sale. The Agreement contains neither a description of the property nor any reference or means by which to guide a party to any extrinsic evidence from which the property can be found and identified.

Appellant argues that although the Agreement did not contain the legal description of the property, her testimony and Mr. Cook's testimony at trial identified the property intended as the subject matter of the Agreement. However, if a writing contains no description or an insufficient description, then oral evidence is not admissible to aid the writing. *Shy*, 12 S.W.2d at 721.

■ Further, the Agreement is not signed by Mrs. Cook. Mr. Cook testified that although Mrs. Cook became aware that he signed the Agreement, he never got permission from her to sell her interest in the 3.68–acre parcel and she never

gave him authority *in writing* to negotiate on her behalf for the sale of the parcel.[4] He stated that Mrs. Cook was adamant about not selling any more land to Appellant.

Therefore, because the Agreement does not include an essential term, namely, a description of the subject matter, and because the Agreement is not signed by Mrs. Cook, *see Austin & Bass Builders, Inc. v. Lewis*, 359 S.W.2d 711, 715 (Mo. banc 1962), it is barred by the statute of frauds.

■ Appellant also argues that barring the Agreement by application of the statute of frauds would perpetrate a fraud. One equitable exception to the statute of frauds is to prevent perpetration of a fraud by application of the bar of the statute. *Lederle v. Lederle*, 916 S.W.2d 423, 428 (Mo.App. E.D.1996). This exception requires the party seeking enforcement of the contract to prove, at a minimum: (1) the performance of acts which constitute cogent evidence of the existence of the contract; (2) the terms of the contract by means of clear, cogent, unequivocal and convincing testimony; and (3) such a change in the party's position as a result of the acts done in reliance on the contract that to permit the other party to avoid enforcement of the contract would result in a gross injustice. *Id.* This exception is rigidly scrutinized and sparingly invoked; relief will be denied if there is doubt as to whether there has been a meeting of the minds or full understanding of the terms sought to be enforced. *Id.*

We conclude that this exception is not applicable because Appellant has not proven the terms of the Agreement, specifically the date for performance or closing date, by means of clear, cogent, unequivocal and

---

4. Where land is held by the entirety, the husband and the wife hold it not as separate individuals but as one person, and neither one acting alone can adversely affect the other's interest. *Niehaus v. Mitchell*, 417 S.W.2d 509, 514 (Mo.App.1967).

convincing testimony. The Agreement includes a handwritten closing date of "asap." Appellant testified that subsequent to signing the Agreement, she inquired of Mr. Cook when the closing was going to take place and he responded that it was supposed to be in February but since Appellant would be out of town for work, he would postpone it. Appellant claims that although she continually asked Mr. Cook when the closing was going to take place, he never informed her of a closing date. Mr. Cook testified that Appellant and a bank loan officer were to set the closing.[5] Mr. Cook also testified that he and Appellant agreed on closing dates and that Appellant was to arrange those times with the title company, but she never did. This conflicting testimony does not prove the terms of the Agreement, specifically the date for performance or closing date, by means of clear, cogent, unequivocal and convincing testimony.

We also note that a neighbor of Appellant and Respondents testified that in the spring of 2002, he heard a conversation between Appellant and Mr. Cook during which Appellant stated that she was "short the money" for the land because she had to give some money to her son.

Accordingly, because the statute of frauds bars enforcement of the Agreement and because the prevention of a perpetration of a fraud exception does not apply, Appellant's point one on appeal is denied.

In her second point on appeal, Appellant argues that the trial court erred in concluding that enforcement of the Agreement was barred by the statute of frauds because the doctrine of partial performance applies to require enforcement.

Another equitable exception to the statute of frauds is where there has been partial performance in furtherance of the agreement. *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 89 (Mo.App. W.D.2003). A party may avoid the bar of the statute of frauds if the party has performed acts that, in themselves, are evidence of the existence of a contract to convey. *Ahrens*, 863 S.W.2d at 614. The acts must have been done in reliance on the contract, and the positions of the parties must have been so materially changed that it would be grossly unjust to allow the other party to rely on the statute of frauds. *Id.* If partial performance is established, the party asserting a contract exists may introduce parol evidence of the verbal terms of the contract. *Id.* If by such parol evidence the complete, definite, fair contract to convey that has been pleaded is proved by clear, cogent, unequivocal, and convincing testimony, such party is entitled to relief. *Id.* Again, this exception is rigidly scrutinized and sparingly invoked; relief will be denied if there is doubt as to whether there has been a meeting of the minds or full understanding of the terms sought to be enforced. *Mika*, 112 S.W.3d at 89.

There is no dispute that Appellant paid Mr. Cook $6,000 ($500 deposit on December 11 plus $5,500 check on December 31) towards the purchase price of the property under the Agreement. There is a dispute as to whether the $12,000 wire transfer was for payment on the property. Nonetheless, part payment of the purchase price of real estate, by itself, does not constitute partial performance. *Gillespie v. Pulsifer*, 655 S.W.2d 123, 126 (Mo.App. W.D.1983).

5. The bank loan officer testified that in November 2001, Appellant applied for a loan "in the twenty thousands" and that Appellant qualified for the loan, but that Appellant never provided title work to the loan officer during the six-month active period of the loan application so the application was closed.

Appellant also identified the following acts in support of her partial performance argument. In March 2002, Appellant began building her house on the 9–acre parcel in a location that would allow a driveway to be built on the 3.68–acre parcel that would give her more direct access to a road than the existing driveway. Appellant cites to Mr. Cook's testimony stating that she used the land and to a letter, submitted into evidence at trial by Appellant, written in August 2002 by Mr. Cook to Appellant in which Mr. Cook states that Appellant had part of the land graded and large white oak trees removed and sold without Mr. Cook's permission, put up fence posts, which Mr. Cook had removed, erected a steel corral for training horses, placed large bales of hay on the land, and moved the property markers.

We conclude that the acts identified by Appellant do not sufficiently prove partial performance of the Agreement to remove it from the operation of the statute of frauds. Although it may not be as convenient as she prefers, Appellant has ingress and egress to her house without the building of a new driveway on the 3.68–acre parcel. Additionally, other than her own testimony, Appellant presented no evidence of an actual decrease in the value of her property due to her not obtaining the 3.68–acre parcel to build a new driveway. She also presented no evidence of the value of any alleged improvements she made to the 3.68–acre parcel. In fact, Mr. Cook's letter to Appellant states that Appellant's actions on the 3.68–acre parcel devalued the land and caused damage that cannot be repaired. Under these circumstances, we conclude that the acts identified by Appellant as indicating partial performance under the Agreement did not so materially change her position that it would be grossly unjust to allow Respondents to rely on the statute of frauds.

Even if the acts identified by Appellant establish partial performance, we must still examine whether Appellant proved the terms of the contract by clear, cogent, unequivocal and convincing testimony. As discussed above, Appellant did not prove the date for performance or closing date by means of clear, cogent, unequivocal and convincing testimony, and therefore, she is not entitled to relief under the partial performance exception.

Accordingly, because the statute of frauds bars enforcement of the Agreement and because the partial performance exception does not apply, Appellant's point two on appeal is denied.

■ In her third point on appeal, Appellant argues that the trial court erred in concluding that no breach of contract occurred and in awarding no damages to Appellant because Respondents had materially breached the Agreement in that they failed to close on the property.

■ If a contract violates the statute of frauds, and therefore a party is unable to obtain specific performance, then a party cannot recover damages for breach of the contract. *Austin & Bass Builders, Inc.,* 359 S.W.2d at 715. As discussed under Appellant's point one and two on appeal, the Agreement violates the statute of frauds and therefore is unenforceable. Thus, Respondents cannot be held to have breached the Agreement by not closing on the property, and accordingly, Appellant is not entitled to damages for any alleged breach. Appellant's point three on appeal is denied.

■ We address Appellant's fourth and fifth points on appeal together as they essentially argue that the trial court erred in not awarding Appellant $18,000 because equity requires restitution be made to her in the amount of the payments she made on the property for her to be made whole.

Mr. Cook testified that he received from Appellant $6,000 ($500 deposit on December 11 plus $5,500 check on December 31) towards the purchase price of the property under the Agreement. However, he has not returned the money because he thinks Appellant should "pay for the damages that she did on the land and for using the land which was a small amount and [he'd] pay her the difference." Mr. Cook also testified that Appellant should be reimbursed the $12,000 from Magic Marketing not him, as the money was a loan to the company not a payment on the property. Again, Appellant argues that the $12,000 was a payment on the property. Further, the August 2002 letter written by Mr. Cook to Appellant indicates that Appellant sold the trees that she had cleared from the property and that a survey company would be hired at a cost to reset the property markers that Appellant had moved.

We agree that equity may entitle Appellant to restitution for all, some, or none of the money that she paid towards the property, with appropriate interest from the date of payment to the date of judgment of restitution. *See Jones v. Linder*, 247 S.W.2d 817, 826 (Mo.1952). Therefore, we remand the case to the trial court to determine the total amount that Appellant paid towards the purchase price of the property and what amount, if any, Appellant is entitled to be reimbursed, taking into consideration the factors discussed above. If necessary, the trial court may receive additional evidence to make its determinations.

*Conclusion*

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed. Costs on appeal shall be split by the parties.

GARY M. GAERTNER, SR., P.J., and LAWRENCE E. MOONEY, J., concur.