

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| JONATHAN CROSMER & KATHLEEN CROSMER, | ) | No. ED113182 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 24SL-CC02032 |
| | ) | |
| DALTON HARRIS, | ) | Honorable Virginia W. Lay |
| | ) | |
| Respondent. | ) | Filed: June 17, 2025 |

### Introduction

Appellants Jonathan Crosmer and Kathleen Crosmer appeal the circuit court's judgment granting Respondent Dalton Harris's motion to dismiss. Appellants raise 14 points on appeal claiming that the circuit court erred in granting Respondent's motion to dismiss Appellants' claims of breach of contract, promissory estoppel, and equitable contribution related to an alleged oral agreement between the parties to divide rent and utilities for a property the parties leased. We affirm the circuit court's judgment as to Appellants' claim of breach of contract, and we reverse and remand as to Appellants' claims of promissory estoppel and equitable contribution.

### Factual and Procedural Background

On May 3, 2024, Appellants filed their petition against Respondent alleging breach of contract (Count I), promissory estoppel (Count II), and equitable contribution (Count III) relating

to a lease ("Written Lease") the parties entered into for a property in St. Louis County in July 2023. By the terms of the Written Lease, Appellants, along with Respondent and his wife, were to rent the property for a total of 34 months, beginning August 1, 2023, while Mr. Crosmer and Respondent's wife were attending law school. The couples signed the Written Lease, which stipulated that all parties were jointly and severally liable under the terms. At some point prior to the signing of the lease, the parties allegedly orally agreed to share the house and split rent and utilities equally in half between the couples (the "Oral Agreement").

Between August and October 2023, Respondent spent only a few days at the property while he was finishing up work in California, where the couple previously lived. Following marital troubles between Respondent and his wife, Respondent moved out of the property in October 2023. While Respondent's wife initially continued to pay half the rent and utilities, she informed Appellants in December 2023 that she could not afford to continue to pay the full half due to her financial situation following the separation. Starting in January 2024, Appellants began paying 75% of the rent while Respondent's wife paid the remaining 25%. While Appellants attempted to contact Respondent regarding the rent payments, such efforts were unsuccessful, and Appellants brought a claim against Respondent in St. Louis County for the unpaid January rent and obtained a default judgment in the amount of $1084.14.

Following the filing of the petition in the instant case, Respondent was served on July 30, 2024. Respondent failed to file any timely response within the prescribed 30 days, and Appellants consequently filed a motion for default judgment on August 30, 2024, on which the court never entered a ruling. On that same day, counsel for Respondent entered on the case and filed a request for additional time in which to file responsive pleadings, which the court granted. On September 11, 2024, Respondent filed a motion to dismiss for failure to state a claim upon

2

which relief may be granted, arguing that Appellants' claims were barred because Appellants were not real parties in interest under the terms of the lease, and thus not entitled to receive rent payments from Respondent, and because all three counts failed to satisfy the Statute of Frauds. Following a hearing, the circuit court granted the motion to dismiss without issuing formal findings of facts or conclusions of law. This appeal follows.

**Standard of Review**

"This Court reviews the grant of a motion to dismiss *de novo*." *Jackson v. Barton*, 548 S.W.3d 263, 267 (Mo. banc 2018). "A motion to dismiss for failure to state a claim on which relief can be granted is an attack on the plaintiff's pleadings." *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019) (quoting *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012)). "Such a motion is only a test of the sufficiency of the plaintiff's petition." *Id*. (quoting *In re T.Q.L.*, 386 S.W.3d at 139). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012)). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *Id*. (quoting *Bromwell*, 361 S.W.3d at 398). "Instead, this Court reviews the petition to determine if the facts alleged meet the elements of a recognized cause of action." *Id*. (quoting *Bromwell*, 361 S.W.3d at 398).

**Points I & II: Motion for Extension of Time and Motion for Default Judgment**

In Points I and II, Appellants raise points of alleged procedural errors related to the circuit court's grant of Respondent's motion for an extension to file responsive pleadings out of time and the circuit court's failure to grant Appellants' motion for default judgment, which are

reviewed for abuse of discretion. *See Solomon v. St. Louis Cir. Att'y*, 640 S.W.3d 462, 473, 477 (Mo. App. E.D. 2022). As to Point I, a review of the record shows that any finding of error would have no effect on the merits of the action, in that Appellants failed to plead a claim upon which relief could be granted as to Count I, and the disposition of this appeal revives their claims in Counts II and III. See Rule 84.13 ("No appellate court shall reverse any judgment unless it finds that error was committed by the circuit court against the appellant materially affecting the merits of the action."). As to Point II, Rule 74.05 governing default judgments is permissive in nature and a trial court does not abuse its discretion when allowing a defendant to answer after the expiration of the time limit of Rule 55.25(a) rather than entering a default judgment. *Funkhouser v. Meadowview Nursing Home*, 816 S.W.2d 947, 952 (Mo. App. S.D. 1991). Accordingly, Points I and II are denied.

## Point III: Timing of Motion to Dismiss

In Point III, Appellants allege that the circuit court erred in granting Respondent's motion to dismiss because Respondent was out of time to file the motion in that it was filed more than 30 days after Respondent was personally served, and because the circuit court's grant of an extension to file responsive pleadings did not contemplate or allow for the filing of a motion to dismiss.

> Rule 55.27 states, in pertinent part, that
>
> Every defense, in law or fact, to a claim in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
> (6) Failure to state a claim upon which relief can be granted,
> …
> A motion making any of these defenses shall be made:
> (A) Within the time allowed for responding to the opposing party's pleading, or
> (B) If no responsive pleading is permitted, within thirty days after the service of the last pleading.

4

Rule 55.27.

Here, Respondent sought leave for an extension of time of 30 days in which to file responsive pleadings, which the circuit court granted. Applying the terms of Rule 55.27, Respondent was thus permitted to file a motion to dismiss for failure to state a claim "within the time allowed for responding to the opposing party's pleading," which in this case was the additional 30 days sought in the motion, regardless of whether the court's order granting the extension explicitly allowed for such motions. See Rule 55.27. Accordingly, the circuit court did not err in granting the motion because it was properly and timely filed. Point III is denied.

## Points IV, V, and VI: Oral Agreement was Not Incorporated into Written Lease and Appellants are Not Parties in Interest

In Points IV, V, and VI, Appellants address Respondent's argument in his motion to dismiss that Appellants are not real parties in interest, and thus not entitled to rent payments from him, because the lease explicitly made the parties jointly and severally liable for all obligations and sums due under the lease *to the landlord*, and therefore no obligations or liabilities exist between the co-tenants. In these points, Appellants make various arguments reliant on the proposition that the alleged Oral Agreement was incorporated into the Written Lease as a partially integrated contract, and that Appellants are therefore parties in interest under the terms of the lease because the oral terms contemplate liabilities between the parties. Specifically, in Point IV, Appellants argue that they are parties in interest because the oral terms were "contemporaneous to and legally incorporated into the Written Lease as a partially integrated contract." Appellants claim that the circuit court should have assumed that their factual allegations regarding the oral terms were true for purposes of a motion to dismiss, and that they were therefore parties in interest for their claims. In Point V, Appellants similarly argue that they are parties in interest because the written lease necessarily implies the existence of

additional terms regarding the division of rent and utilities. Finally, in Point VI, Appellants posit that the parties' joint liability under the Written Lease results in equitable responsibilities to each other.

The Written Lease explicitly states that "[e]ach Tenant is jointly and individually liable for all obligations and sums due under this lease agreement. A lease violation by one tenant is a violation by all Tenants."

"A 'joint and several' contract is a contract with each promisor and a joint contract with all, so that parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time." *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 902 (Mo. App. S.D. 2003). "It is characteristic of a joint obligation that each obligor is bound for the performance of the entire obligation." *Id.* (quoting *Kay v. Freeman*, 785 S.W.2d 90, 93 (Mo. App. W.D.1990)). Generally, "[w]hen two or more promisors are jointly bound to fulfill obligations under a joint contract, either of them may be charged with the entire liability under the contract." *Pivot Holdings, LLC v. Daniel & Henry Co.*, 626 S.W.3d 772, 784 (Mo. App. E.D. 2021) (quoting *Schubert*, 111 S.W.3d at 902-03) (internal citations omitted). "Moreover, an agreement between promisors that their liability shall be several *does not affect the rights of the promisee, where the promisee intends that their liability shall be joint and is justified in such intention.*" *Id*. (quoting *Illinois Fuel Co. v. Mobile & O.R. Co.*, 8 S.W.2d 834, 840 (Mo. 1928)) (internal quotation omitted, emphasis added).

Here, any question of how the rent and utilities were to be split amongst the parties is ultimately inconsequential to the terms of the Written Lease, as the Written Lease explicitly makes the parties jointly liable for the entirety of the obligations under the lease. *See Illinois Fuel Co.*, 8 S.W.2d at 841 ("This contract, in usual, plain, and appropriate terms, manifests an

6

intention that the [parties] shall be jointly bound. In such case the joint promise cannot be made several by any doubtful implication or limitations. Express words of severance must appear."). Accordingly, while the parties before us may have orally agreed to the division of the rent and utilities amongst themselves, "how the joint obligors might choose, as between themselves, to discharge the obligation, was a matter of no concern to the obligee," *Schubert*, 111 S.W.3d at 903, and any such arguments based upon the alleged terms of the Oral Agreement cannot be legally tied to or alter the liabilities created by the Written Lease.

Furthermore, beyond Appellants' arguments relating to the division of rent and utilities, Appellants have made no further allegations as to how the Written Lease would constitute an ambiguous or incomplete writing so as to necessitate the admission of parol evidence related to contemporaneous oral agreements. "In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary or contradict the terms of an unambiguous, final and complete writing." *STL Riverview Plaza LLC v. Metro. St. Louis Sewer Dist.*, 681 S.W.3d 290, 299 (Mo. App. E.D. 2023) (quoting *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 811 (Mo. App. E.D. 1992)).

> For the parol evidence rule to apply, there must be a completely integrated contract. A written agreement is integrated if it represents a final expression of one or more terms of the agreement. Contracts can be either completely or partially integrated. If the writing omits a consistent additional term that is either agreed to for separate consideration or might naturally have been omitted in the circumstances, the agreement is considered only partially integrated and collateral facts and circumstances may be introduced to prove consistent additional terms. If a writing omits an essential term, it is considered incomplete and extrinsic evidence may be introduced to establish the parties' intent.

*Id*. (internal quotations and citations omitted). Appellants have advanced no argument beyond their unsupported allegations related to the division of rent and utilities—which has no effect on the terms of the lease—that the contract is not complete, and a review of the Written Lease reveals no such deficiencies.

Finally, as to Appellants' argument in Point VI that the two married couples each took a one-half share of the lease as tenants by the entirety, and that each couple is thus joint tenant with the other couple, we find nothing in the terms of the Written Lease that contemplates this dynamic or rebuts the joint liability of all the individuals explicitly imposed.

Therefore, because the Written Lease is a completely integrated lease that imposes joint and several liability on the parties, to which the parties consented, and which cannot be and is not undone by any alleged oral terms or other maxim of law, Appellants' argument that they are made parties in interest to the Written Lease by the terms of the alleged Oral Agreement is without merit. Points IV, V, and VI are denied.

### Points VII, VIII, IX, X, XI, XII, XIII, and XIV: the Statute of Frauds Bars the Oral Agreement

Appellants devote seven points on appeal to various arguments concerning the application of the Statute of Frauds to the alleged Oral Agreement and Written Lease. In the Motion to Dismiss, Respondent advanced two theories upon which Appellants' breach of contract claims in Count I were barred by the Statute of Frauds. First, any alleged oral agreement that occurred after the Written Lease was signed would constitute a modification that would need to be in writing and signed by all the parties to the Written Lease, including the landlord. Second, any alleged oral agreement that occurred prior to the Written Lease would concern an interest in property and exceeds one year, both of which require the agreement to be in writing to be enforceable under the Statute of Frauds. As to Appellants' Counts II and III for promissory estoppel and equitable contribution, respectively, Respondent alleged that equitable remedies may not be used as an "end around" for noncompliance with the Statute of Frauds and that the application of any equitable remedy would nullify the validity of the Statute of Frauds.

8

In Points VII and VIII, Appellants claim the existence of a sufficient written memorandum—either the Written Lease or Respondent's wife's affidavit, which was signed more than a year after the Written Lease—to satisfy the Statute of Frauds pertaining to the terms of the alleged Oral Agreement. In Points IX, X, and XI, Appellants assert various exceptions to the Statute of Frauds, including the judicial admission exception, the part performance exception, and the promissory estoppel exception. Finally, in Points XII, XIII, and XIV, Appellants argue that the Statute of Frauds does not bar their claims as to Count III for equitable contribution because the Statute of Frauds cannot bar equitable claims arising from written documents, in this case the Written Lease, and because denying Appellants' equitable claim and granting the motion to dismiss is likely to result in a multiplicity of suits.

In Missouri, the Statute of Frauds is set forth in Section 432.010, which states, in pertinent part,

> No action shall be brought to charge… any person … upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith…

Section 432.010.

a. *Written Memorandum Requirement*

"Whether a writing satisfies the statute of frauds is a question of law." *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 589 (Mo. App. E.D. 2022) (quoting *Johnson v. Cook*, 167 S.W.3d 258, 262 (Mo. App. E.D. 2005)). As established above, the Written Lease constitutes a fully integrated contract that is not affected, changed, or altered by any terms of the alleged Oral Agreement. Thus, the Oral Agreement standing alone must satisfy the Statute of Frauds requirements set out in Section 432.010 that the agreement be in writing and signed by the

9

parties. Accordingly, Point VII, which alleges that the Written Lease acts as a written memorandum of the Oral Agreement because they are partially integrated, necessarily fails.

Next, Appellants argue in Point VIII that the affidavit signed by Respondent's wife in October 2024 acts as a sufficient written memorandum of the alleged Oral Agreement because "[Respondent and his wife] were acting in partnership or joint venture when they signed the lease with [Appellants] and the landlord." However, fatal to Appellants' argument is the timing of the affidavit. While Appellants are correct that a written memorandum need not be contemporaneous to the agreement in order to satisfy the Statute of Frauds, Missouri courts have long held that it must be created *before suit is brought*. *See Crawford v. Dahlenberg*, 221 Mo. App. 600, 283 S.W. 65, 68 (Mo. App. 1926) ("the note or memorandum need not be made contemporaneously with the contract. Such memorandum will be good if it come[s] into existence at any time before suit [is] brought.") (citing *Cunningham v. Williams*, 43 Mo. App. 629, 631 (Mo. App. 1891)); *see also Gate City Nat. Bank v. Elliott*, 181 S.W. 25, 28 (Mo. 1915); *Cash v. Clark*, 61 Mo. App. 636, 640 (Mo. App. 1895); *Heideman v. Wolfstein*, 12 Mo. App. 366, 370 (Mo. App. 1882). Because Respondent's wife's affidavit was signed October 1, 2024,—five months after the filing of the suit—it cannot satisfy the Statute of Frauds' written memorandum requirement. *See id*.

Therefore, no sufficient written memorandum exists to satisfy the Statute of Frauds regarding the Oral Agreement. Points VII and VIII are denied.

b. *Equitable Exceptions to the Statute of Frauds*

In Points IX, X, and XI, Appellants assert the application of three exceptions to remove the Oral Agreement from the Statute of Frauds: the judicial admission exception, the part performance exception, and the promissory estoppel exception, respectively.

First, in Point IX, Appellants allege that the affidavit of Respondent's wife admitting to the entire agreement alleged between Appellants and Respondent is sufficient to establish the judicial admission exception because Respondent and his wife were acting in partnership or joint venture when they made the agreement, and thus Respondent's wife's admission serves as an admission by Respondent barring him from asserting a defense pursuant to the Statute of Frauds. Nevertheless, Appellants' bare assertion that Respondent is bound by his wife's affidavit "admitting the existence of the entire agreement" because the two were acting in partnership or joint venture at the time is unsupported by facts other than the fact that the parties were married at the time and pursued the lease together. Generally,

> [a] joint venture is a type of partnership. Though it is a consensual arrangement, a joint venture requires no particular formalities. A joint venture is an association of persons to carry out a single business enterprise for profit, for which purpose they combine property, effort, skill and knowledge. The relationship arises only from contract, but the agreement may be established without formal terms, and implied from circumstances that such an enterprise was in fact entered into. A joint venture's essential elements are: (1) an express or implied agreement among members; (2) a common purpose to be carried out by the members of the group; (3) a community of pecuniary interest in the common purpose; and (4) an equal voice, giving an equal right of control in the direction of the enterprise.

*TooBaRoo, LLC v. W. Robidoux, Inc.*, 614 S.W.3d 29, 39 (Mo. App. W.D. 2020) (internal quotations and citations omitted). Appellants have cited no caselaw for their proposition that a married couple engaging in an effort to pursue a personal real estate lease constitutes a joint venture or partnership under this meaning. Rather, Missouri law generally finds that no agency relationship arises purely from the existence of a marital relationship, and that one spouse may only be bound by the other in contract where the spouse entering into the agreement had the apparent authority to act on the other spouse's behalf in entering the agreement or the other spouse later ratifies it. *Stoner v. Dir. of Revenue*, 358 S.W.3d 514, 520 n.12 (Mo. App. W.D. 2011), *as modified on denial of reh'g* (Jan. 31, 2012) (citing *Rosehill Gardens, Inc. v. Luttrell*,

11

67 S.W.3d 641, 647 (Mo. App. W.D. 2002)). Appellants alleged no facts in their petition beyond the bare assertion that the existence of Respondent's marriage constitutes joint liability that tends to prove the granting of such authority here. "[U]nless the petition alleges facts sufficient to bring the oral agreement within the exception to the statute of frauds, the petition is insufficient as a matter of law." *Holt v. Story*, 642 S.W.2d 394, 396 (Mo. App. E.D. 1982) (citing *International Plastics Development Inc. v. Monsanto Co.*, 433 S.W.2d 291 (Mo. banc 1968)); *see also Satterfield v. Missouri Dental Ass'n*, 642 S.W.2d 110, 112 (Mo. App. W.D. 1982) ("the statute of frauds may properly be raised in a motion to dismiss for failure to state a claim if it appears the contract in question is unwritten and the plaintiff fails to plead facts which would take the contract out of the operation of the statute.").

In Point X, Appellants argue that the part performance exception to the Statute of Frauds applies here because Appellants have taken possession of the residence, paid rent and utilities, refrained from finding a smaller and cheaper house, and made valuable improvements to the house consistent with the lease, all in reliance upon the alleged Oral Agreement. It is unclear from Appellants' brief or a review of the petition whether Appellants are arguing the application of this exception to Count I for breach of contract or Count II for promissory estoppel. Notably, "[t]he doctrine of part performance, interposed to avoid the defense of the statute of frauds, is a creature of equity and has no application to an action at law for breach of contract." *Urologic Surgeons, Inc. v. Bullock*, 117 S.W.3d 722, 728 (Mo. App. E.D. 2003) (quoting *Haugland v. Parsons*, 863 S.W.2d 609, 610 (Mo. App. E.D.1992)); *see also Alonzo v. Laubert*, 418 S.W.2d 94, 97 (Mo. 1967). Accordingly, as far as Appellants aim to use the part performance exception to the Statute of Frauds for Count I, it falls short.

Partial performance in furtherance of the agreement may serve as an equitable exception to the Statute of Frauds. *Johnson*, 167 S.W.3d at 264. A party may avoid the bar of the Statute of Frauds if the party has performed acts that, *in themselves*, are evidence of the existence of the contract. *Id*. The acts must have been done in reliance on the contract, and the positions of the parties must have been so materially changed that it would be grossly unjust to allow the other party to rely on the Statute of Frauds. *Id*. If partial performance is established, the party asserting that a contract exists may introduce parol evidence of the verbal terms of the contract. *Id*.

Here, Appellants allege that their actions of taking possession of the residence, paying rent and utilities, refraining from finding a smaller and cheaper home, and making valuable improvements to the residence, such as keeping up the yard and installing furniture, are acts that, in themselves, serve as evidence of the existence of the Oral Agreement. However, these actions are more fittingly evidence of the existence of the Written Lease rather than the Oral Agreement, as all such conduct was either required or permitted under the terms of the Written Lease. Additionally, we are unconvinced that such actions, as contemplated by the Written Lease rather than the alleged Oral Agreement, so materially changed the Appellants' position so as to result in gross injustice should the Statute of Frauds bar their claims related to the alleged Oral Agreement. Therefore, partial performance cannot take this case out of the Statute of Frauds.

Finally, in Point XI, Appellants argue that "the promissory estoppel exception to the Statute of Frauds applies, in that the lease is a partially integrated contract for an interest in land, and injustice can be avoided only by enforcement of the promise." We again note, as in Point X, that equitable exceptions to the Statute of Frauds, such as the part performance exception and promissory estoppel, may not be asserted for breach of contract claims. *See Midwest Energy, Inc. v. Orion Food Sys., Inc.*, 14 S.W.3d 154, 158 (Mo. App. E.D. 2000) ("Our cases clearly hold that

a contract otherwise unenforceable because of the Statute of Frauds cannot be made into a fully enforceable contract through any doctrine of promissory estoppel."). "Full enforcement of the contract would defeat the purpose of the Statute of Frauds." *Id*.

As far as Appellants' attempt to assert a claim of promissory estoppel in Count II, equitable exceptions to the Statute of Frauds may be used to prevent fraud or gross injustice, and are to be "rigidly scrutinized and sparingly invoked so that relief will be denied if there is doubt as to whether there has been a meeting of minds or full understanding of the terms sought to be enforced." *Mika v. Cent. Bank of Kansas City*, 112 S.W.3d 82, 89 (Mo. App. W.D. 2003). Respondent's argument in his motion to dismiss and in his appellate brief that equitable claims can never be applied to recover on an agreement that is barred by the Statute of Frauds is categorically incorrect. While a party may not use an equitable claim to bring an agreement barred by the Statute of Frauds within the Statute so as to facilitate *full enforcement* of the contract or agreement, equitable exceptions and claims may still be applicable in extraordinary circumstances and the remedies of such are limited as justice requires. *See Midwest Energy, Inc.*, 14 S.W.3d at 158; *see also Geisinger v. A & B Farms, Inc.*, 820 S.W.2d 96, 98-100 (Mo. App. W.D. 1991) (recognizing that there might be some room for remedies based on promissory estoppel where the agreement is barred by the Statute of Frauds). Generally, only partial relief may be accorded in cases in which the Statute of Frauds stands as a barrier to complete enforcement, and such damages are "measured by the reliance and should be limited to those naturally flowing from the reliance." *Id*. at 160.

> Under the First Restatement, in order to prevail on a claim of promissory estoppel, a party had to establish four elements: (1) a promise; (2) promisee detrimentally relies on the promise; (3) promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise.

14

*Spicer v. Spicer*, 568 S.W.3d 480, 490 (Mo. App. E.D. 2019) (quoting *Kearney Com. Bank v. Popejoy*, 119 S.W.3d 143, 147 (Mo. App. W.D. 2003)).

In Count II of the petition, Appellants alleged that Respondent and his wife promised to be responsible for half the obligations under the Written Lease, including rent and utilities, and that Appellants detrimentally relied on that promise when they signed the Written Lease, took possession of the property, moved into the property, and made rent and utilities payments. Appellants further asserted that they refrained from finding other housemates or finding a smaller and cheaper house to rent based on the expectation and promise that Respondent and his wife would also move into the house and pay a half share of the obligations under the lease.

Because our standard of review for an appeal of a motion to dismiss for a failure to state a claim mandates that this Court accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader, we find that such facts are satisfactory to raise a claim for promissory estoppel sufficient to survive a motion to dismiss. The circuit court thus erred in granting the motion to dismiss as to Count II of Appellants' petition for promissory estoppel, as such a claim is not barred by the Statute of Frauds, as alleged by Respondent in the motion to dismiss. Point XI is granted.

c. *Application of Statute of Frauds to Equitable Contribution Claims*

In Points XII and XIII, Appellants argue that the circuit court erred in granting the motion to dismiss as to Count III of Appellants' petition for equitable contribution because the Statute of Frauds does not bar equitable claims, in that Count III arises from equity, not contract law, and is based on the joint liability created by the Written Lease alone. In Point XIV, Appellants allege that the circuit court erred in granting the motion to dismiss, in equity, because it is likely to result in a multiplicity of suits.

15

In the motion to dismiss, Respondent only argued that Count III of the petition for equitable contribution was barred by the Statute of Frauds because the parties "cannot avail themselves of this equitable remedy without nullifying the validity of the Statute of Frauds." However, Respondent misstates Appellants' claim in Count III as involving obligations under both the Written Lease and the alleged Oral Agreement, when in actuality Appellants only alleged equitable contribution based on an "equitable share of joint tenant liabilities arising from the Lease."

The "general doctrine of contribution is not founded on contract, but is based on the principle of equality in bearing a burden, that is, wherever there is a common right the burden is also common." *Wood v. Wood*, 2 S.W.3d 134, 139-40 (Mo. App. S.D. 1999) (quoting *Tindall v. Holder*, 892 S.W.2d 314, 323 (Mo. App. S.D. 1994)).

> The doctrine of contribution finds its basis in general principles of equity and of natural justice, not contract. It is to be applied when one is compelled to pay more than his share of a common obligation that several persons are obligated to discharge. Although there is authority to the contrary, it is not necessary that the entire debt should have been paid, but the payment must have been for more than the share of the person seeking contribution. As a general rule, persons who sign as makers as part of the same transaction are jointly and severally liable unless the instrument specifies otherwise, and a maker who pays the instrument is entitled to contribution from other co-makers.

*Id*. (internal citations and quotations omitted). Accordingly, Respondent's argument in the motion to dismiss that this claim was barred by the Statute of Frauds necessarily fails, as Appellants claim is based entirely on the Written Contract, which is valid under the Statute of Frauds, rather than the alleged Oral Agreement, which is barred by the Statute of Frauds and not the basis of their claim in Count III.

A plaintiff is found to have carried its full pleading obligation when it alleged the joint execution of the contract, its payment in full, the demand upon a defendant for contribution, and the defendant's refusal. *Wood*, 2 S.W.3d at 140. "[O]nce a prima facie case for equitable

16

contribution is made by a plaintiff, if there is any contrary agreement between the parties or any other equitable reason why [d]efendant was not responsible for a contribution in that amount, the burden of alleging and proving such facts is upon [d]efendant." *Id*. at 141 (quoting *Transwestern, Industries, Inc. v. Shue*, 537 S.W.2d 848, 850 (Mo. App. 1976)). "Similarly, as to a pleading for contribution, it is generally sufficient if facts are averred which make out a prima facie case for contribution; facts which rebut the presumed equity to contribute should be set up by way of defense and need not be negatived in a complaint for contribution." *Id*.

Here, Appellants established their prima facie case for equitable contribution by showing that a joint debt existed, that they had made more than their share of payments on the parties' joint obligation, and that they had demanded contribution from Respondent. Accordingly, the burden shifted to Respondent to show that his duty of contribution was relieved, which Respondent did not do. Therefore, because Respondent failed to rebut Appellants' prima facie case for equitable contribution and only argued that such equitable claims were barred by the Statute of Frauds, the circuit court erred in granting the motion to dismiss as to Count III of Appellants' petition for equitable contribution. Points XII and XIII are therefore granted, and Point XIV is denied for mootness.

**Conclusion**

For the foregoing reasons, the judgment of the circuit court granting Respondent's motion to dismiss for failure to state a claim is affirmed in part, as related to Count I, and reversed in part, as related to Counts II and III. We remand to the circuit court for further proceedings consistent with this opinion.

_____
Renée D. Hardin-Tammons, J.

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr., J., concur.